# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1196


**CARLOS BOONE, ET UX.**

**VERSUS**

**CONOCO PHILLIPS COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 92292
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John E. Conery, Judges.


**AFFIRMED.**


**Warren A. Perrin**
**Perrin, Landry, deLaunay, Dartez & Ouellet**
**251 La Rue France**
**Lafayette, LA 70508**
**Telephone: (337) 237-8500**
**COUNSEL FOR:**
    **Plaintiffs/Appellants - Carlos Boone and Lori Theriot Boone**

**Morgan J. Wells, Jr.**
**Larzelere, Picou, Wells, Simpson, Lonero, LLC**
**3850 N. Causeway Boulevard – Suite 1100**
**Metairie, LA 70002**
**Telephone: (504) 834-6500**
**COUNSEL FOR:**
    **Defendant/Appellee - EmerQuest Oil & Gas, LLC**

**Michael Gregory Stag**
**Smith Stag, LLC**
**365 Canal Street – Suite 2850**
**New Orleans, LA 70130**
**Telephone:  (504) 593-9600**
**COUNSEL FOR:**
        **Plaintiffs/Appellants - Carlos Boone and Lori Theriot Boone**

**Rebecca H. Dietz**
**King, Krebs & Jurgens, PLLC**
**201 St. Charles Avenue – 45th Floor**
**New Orleans, LA 70170**
**Telephone:  (504) 582-3800**
**COUNSEL FOR:**
        **Defendant/Appellee - Conoco Phillips Company**

**THIBODEAUX, Chief Judge.**

The plaintiffs, Carlos and Lori Boone, appeal from a motion for summary judgment and exception of prescription decided adversely to them and filed by EnerQuest Oil & Gas, LLC, lessee of former owners of the plaintiffs' property. Finding that the plaintiffs failed to carry their burden of proving a valid right of action in tort or contract, we affirm the judgment dismissing EnerQuest from the plaintiffs' suit.

## I.

## ISSUES

We must decide:

(1) whether the trial court erred in granting summary judgment to EnerQuest; and

(2) whether the trial court manifestly erred in granting EnerQuest's exception of prescription.

## II.

## FACTS AND PROCEDURAL HISTORY

In August of 2005 the Boones purchased 18.66 acres of land encumbered by mineral reservations and oil and gas leases; the sale price was $120,000.00. The sellers, Primeaux Properties, Inc., had purchased the encumbered property in 2003 from Aaron Lagneaux and Eric Lagneaux for $105,000.00. Oil and gas operations on the property allegedly date back to 1972. The Lagneaux acquisition was via generational inheritances dating back to 1971, and it apparently included the minerals because Lagneaux specifically reserved "all

of the minerals and mineral rights" to the property in its act of sale to Primeaux in 2003.

The defendant oil and gas operator, EnerQuest, had purchased the wells and operating rights from Phillips Petroleum Company in 2000. EnerQuest sold all of its operating rights and interest in the property, along with all of its leases, facilities, wells, and equipment to Petro "E" in 2004. The sale and assignment to Petro "E" included EnerQuest's use of, and obligation to clean and restore, the surface of the property.

In May of 2010, the Boones, asserting contamination and property damage, filed suit against six oil and gas operators, including CONOCOPHILLIPS Company as successor to Phillips, EnerQuest, Petro "E," and three other operators. The Boones asserted that they had within the last year found abandoned debris and equipment and asserted a failure to properly clean and restore the property. In a first amended petition in July of 2012, the Boones identified three of five wells on the property that had been operated by EnerQuest prior to its sale to Petro "E."

EnerQuest filed a motion for summary judgment asserting that the Boones were precluded by law from asserting a tort or contract claim for property damage that pre-dated their 2005 acquisition of the property without a specific assignment of that right from the former owner. Among its exhibits, EnerQuest attached an "Operator History by Well" for each of its three former wells, showing that EnerQuest did not conduct any operations on the property after April 30, 2004, when it sold its rights and interest to Petro "E," effective May 1, 2004. EnerQuest also attached the act of sale from Primeaux to the Boones dated August 26, 2005, showing that no assignment of pre-acquisition damage rights were conveyed to the Boones by the previous owner, Primeaux.

2

The Boones' opposition to the motion for summary judgment included newly-obtained assignments of rights from the previous owners, Primeaux and Lagneaux. EnerQuest asserted that the assignments were invalid and that any tort claims they sought to transfer were prescribed since Lagneaux sold the property in 2003 and Primeaux sold the property in 2005.

The trial court allowed the Boones permission to file a second supplemental and amending petition asserting their right as assignees to the rights of the previous owners; claims for fraud and conspiracy, as well as the solidary liability of all defendants. The trial court then granted EnerQuest's motion for summary judgment and exception of prescription.

III.

**STANDARD OF REVIEW**

The grant or denial of a motion for summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (citations omitted); La.Code Civ.P. art. 966. "When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review." *Specialized Loan Servicing LLC v. January*, 12-2668, pp. 3-4 (La. 6/28/13), 119 So.3d 582, 584 (citations omitted).

3

IV.

## LAW AND DISCUSSION

At issue in this matter is the correctness of the trial court's judgment granting the motion for summary judgment and the exception of prescription filed by the defendant, EnerQuest. The bases of EnerQuest's motion and exception are that the Boones (1) have no valid contract claims against EnerQuest because the subsequent purchaser doctrine invalidates their claims for pre-acquisition property damage; the plaintiffs are not a party to any lease, assignment, or other contract with EnerQuest; and the plaintiffs did not obtain an assignment of any contractual rights from the previous owners. EnerQuest further asserts that the Boones (2) have no claims in tort because any tort claims acquired from the previous owners have prescribed; the claims asserted in the plaintiffs' second supplemental petition do not relate back to the original petition; and EnerQuest is not solidarily liable with Petro E for any actionable tort claims.

The Boones argue that (1) their contract claims are valid because the subsequent purchaser doctrine does not apply; the relevant contracts give them a right of action to sue for damages and restoration of the property; and the contract claims have not prescribed because EnerQuest operated under mineral leases until 2004, and the surface lease was in effect until 2012. As to the tort claims, the Boones argue that (2) they timely asserted tort claims against solidary and/or joint tortfeasors; they obtained valid assignments of the tort claims at the time of the damage; and their second supplemental petition relates back to the filing of their original petition for damages.

We begin with a review of the subsequent purchaser rule or doctrine.

4

## *Subsequent Purchaser Doctrine*

> The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Eagle Pipe and Supply, Inc. v. Amerada Hess Corp.*, 10-2267, p. 8 (La. 10/25/11), 79 So.3d 246, 256-57.

In articulating the application and source of the subsequent purchaser doctrine, the Louisiana Supreme Court in *Eagle Pipe and Supply, Inc.* provided a thorough analysis of the pertinent principles of Louisiana property law and Louisiana's law of obligations in the Louisiana Civil Code. Relevant to our inquiries here, a real right is not defined by the Civil Code but has long been held to be a proprietary interest and a species of ownership, which "defines the relation of man to things and may, therefore, be declared against the world." *Eagle Pipe and Supply, Inc.*, 79 So.3d at 259 (quoting *Harwood Oil & Mining Co.*, 240 La. at 652, 124 So.2d at 767 (1958)). A real right and a real obligation both attach to a thing. *Id.* at 261; La.Civ.Code art. 1764, Revision Comments--1984, (b).[1]

> The legal right that a person has against another person to demand the performance of an obligation is called a personal right. Distinct from a real right, which can be asserted against the world, a personal right is effective only between the parties. La. C.C. art. 1758. This court has declared that "a personal right ... defines man's relationship to man and refers merely to an obligation one owes to another which may be declared only against

---

[1]A real obligation is transferred to the universal or particular successor who acquires the movable or immovable thing to which the obligation is attached, without a special provision to that effect.

But a particular successor is not personally bound, unless he assumes the personal obligations of his transferor with respect to the thing, and he may liberate himself of the real obligation by abandoning the thing. La.Civ.Code art. 1764.

the obligor." *Harwood Oil & Mining Co.*, 240 La. at 651, 124 So.2d at 767 [citing *Reagan* [*v. Murphy*, 235 La. [529], 541, 105 So.2d [210], 214 [(1958))].

. . . .

This court has held "[u]nder the civil law concept, a lease [a contract about property] does not convey any real right or title to the property leased, but only a personal right." *Richard v. Hall*, 2003-1488, p. 17-18 (La.4/23/04), 874 So.2d 131, 145. "That a lease is not a real right under the civil law is well settled." *Reagan*, [105 So.2d at] 214.

. . . .

Real rights, and real obligations pass to a subsequent acquirer of the thing to which it is attached without the need of a stipulation to that effect. La. C[iv.Code] art. 1764, Revision Comments--1984, (c). A personal right, by contrast, cannot be asserted by another in the absence of an assignment or subrogation. La. C.C. art. 1764, Revision Comments--1984, (d) and (f).

*Eagle Pipe and Supply, Inc.*, 79 So.3d at 261-62 (footnotes omitted).

Based upon the foregoing, real rights and obligations attach to the thing, while personal rights and obligations attach to the person. Further, and more specifically, the real rights and obligations of ownership attach to a piece of property when it is sold without the need of a stipulation, but the personal rights and obligations arising from a lease between the former owner and the lessee for events occurring before the sale do not pass to the new owner unless they are specifically assigned.

As illustrated by *Eagle Pipe and Supply, Inc.* through its analysis of *Clark v. J.L. Warner Co. et al.*, 6 La.Ann. 408 (1851) and subsequent jurisprudence, the former owner retains the right to recover the damages caused by the former owner's lessee during the former owner's ownership of the property. "This personal right of the property owner arises because his real rights in the

ownership of the property have been disturbed--his use, enjoyment or disposal of the property." *Eagle Pipe and Supply, Inc.*, 79 So.3d at 264. The court further stated:

> *Clark* explicitly states [that] the personal right of the property owner to demand damages for the injury to the property must be assigned or subrogated if the personal right is to survive a change of ownership in the property:
>
>> [The former owner's] bill of sale to the plaintiff is in the usual form for the conveyance of real estate and its appurtenances. It does not transfer her claim for damages, expressly, nor is there anything in it which indicates a transfer by implication. The rights and appurtenances mentioned in the bill of sale have always been considered real rights. It does not appear, therefore, either by law or contract, that the plaintiff has any claim for damages previous to the 16th of May, 1848, when he purchased the property.

*Eagle Pipe and Supply, Inc.*, 79 So.3d at 264-65 (quoting *Clark*, 6 La.Ann. at 409).

Here, the act of sale from Primeaux to the Boones on August 26, 2005, provides that, for the consideration of $120,000.00, Primeaux "transfer[s] and deliver[s] with full guarantee of title and free from all encumbrances and with subrogation to all of its rights and actions of warranty against previous owners" the 18.66-acre tract of land in the legal description. Likewise, the previous act of sale from Lagneaux to Primeaux in 2003 contained almost identical language. Under *Clark* and *Eagle Pipe*, this language is general language and in the usual form for a conveyance of real estate. It does not assign the seller's personal right to sue the lessee for damage already done to the land.

The 2003 Lagneaux act of sale states that Lagneaux "reserves all of the minerals and mineral rights to the subject property" and that the sale to

Primeaux is subject to mineral reservations and leases. The 2005 Primeaux act of sale to the Boones references the prior sale from Lagneaux to Primeaux in 2003 and provides the recordation information. Both acts of sale state that the sale is "subject to the restrictive covenants, easements, mineral reservations, mineral leases and obligations of ownership" affecting the property. Thus, both documents indicate that mineral rights and leases have been reserved and encumber the land, and neither document transfers to the new owner the former owner's right to sue for damages.

The subsequent purchaser doctrine is not limited to apparent damages; it applies to prohibit suit against the lessee whether the pre-acquisition damage is apparent or not. *Eagle Pipe and Supply, Inc.*, 79 So.3d 246. If damage to the property is apparent, the purchaser is presumed to know its condition and to have negotiated a sale price taking the defects into consideration. *Id.* If the damage is not apparent, the purchaser has a cause of action in redhibition against the seller for rescission of the sale or reduction of the sale price, but he does not have a right of action against the seller's lessee.

The subsequent purchaser doctrine is not limited to tort claims, as shown in *Clark*, 6 La.Ann. 408, and it is not limited to cases involving expired leases, as suggested by the Boones. In its comprehensive analysis of the doctrine, the court in *Eagle Pipe and Supply, Inc.*, 79 So.3d at 266 (emphasis added) (footnote omitted), discussed further jurisprudence that included the relevant issues, as follows:

> In *Matthews v. Alsworth*, 45 La.Ann. 465, 12 So. 518 (1893), property was sold *subject to an existing lease*. The new owner filed suit against the lessee for a dissolution of the lease based on the lessee's violation of his obligations, for compensation for the diminution in

8

the value of the property for the lessee's damage to the property, and for the rent for the year which accrued in the year before the sale. This court found the new owner had no right of action to sue for damages from the lessee for damage to the property before the sale, *either under the lease contract or in tort*. Instead, the right to sue for damage to the property inflicted before the sale was a personal right of the former owner/lessor which arose from the lessee's breach of the contractual obligations of the lease during the time the lessee owed those obligations to the former owner/lessor.

The former owner had not assigned or subrogated this personal right to the new owner in the act of sale. The deed contained the following language:

> Said lease and all the aforesaid conveyors' rights in, to, or under the same are transferred hereby, and simultaneously herewith, to the conveyee herein. This conveyance is made with complete transfer and subrogation of all rights and all actions of warranty or otherwise against all former claimants, proprietors, tenants, or warrantors of the property herein conveyed.

By this language, the court held the new owner/lessor was subrogated to the lease provisions, *but only from the date of his purchase of the property*. "The lessee is liable on the covenants of his lease, and to these, unquestionably, plaintiff [the new property owner] is subrogated from the date of his purchase. By the use of the words 'right in, to, or under the lease,' the plaintiff did not become an assignee of damages of date prior to the sale." *Matthews*, 45 La.Ann. at 469, 12 So. at 519.

The personal right of the owner to sue for damages was not explicitly assigned in the act of sale, and additionally was not an accessory right which passed with the title without description of, or reference to, the claim. In the act of sale, the property was specifically described, and there was no mention of a claim for damages. The court held it could not "presume that there were additional rights in the nature of damages, the deed being silent as to damages." *Matthews*, 45 La.Ann. at 469, 12 So. at 519. *Matthews* reinforces the proposition that personal rights of the former owner do not pass with the property in an act of sale unless specifically assigned or subrogated to the new owner.

Thus, even when property is conveyed during the term of a lease, the purchaser cannot recover from the lessee for damages accruing prior to the sale. *See also Prados v. South Central Bell Tel. Co.*, 329 So.2d 744 (La.1975). In *Matthews*, 12 So. 518, because the deed of sale also conveyed the lease and the seller's rights in the lease to the new owners, they would have a right of action against the lessee, but only for damages arising after the date of sale.

In the present case, the acts of sale fail to transfer any pre-acquisition rights to the new owners for damages caused by the lessee prior to the act of sale and specifically withhold the minerals and all leases from the act of sale. Lagneaux reserved the rights for himself in 2003, and in 2005 Primeaux, who never obtained them from Lagneaux, referenced the mineral and lease reservations in its sale to the Boones and pointed the Boones to the recorded prior act of sale from Lagneaux. Accordingly, the Boones knew that the land was encumbered by reserved mineral rights and leases. Under the subsequent purchaser doctrine, they do not have a right of action to sue the lessee for damages occurring prior to their acquisition of the property.

### *The Assignments*

In September of 2012, the Boones obtained assignments from former owners, Lagneaux and Primeaux, in attempts to obtain the right to sue EnerQuest for damages that the act of sale did not convey. We find that the assignments also fail to provide the plaintiffs with a right of action for pre-acquisition damages against EnerQuest. The Lagneaux assignment attempts to assign all personal and tort causes of action, including inherited rights, to the Boones. Like the act of sale, however, the assignment specifically excludes mineral and contractual rights and

leases. The Lagneaux assignment states in the fourteenth paragraph (emphasis added): *"Nothing herein shall affect and this Agreement specifically excludes the mineral rights and/or contractual rights, including, but not limited to, leases, of the Parties."* Lagneaux sold the property to Primeaux in March of 2003. If Lagneaux had taken a lower price from Primeaux because of damage caused to the land by EnerQuest, Lagneaux would have known this at least by the time of sale. Thus, under La.Civ.Code art. 2315, and under La.Civ.Code art. 3493 specifically governing damage to immovable property, Lagneaux had one year, or until March of 2004 to bring suit against EnerQuest. Therefore, in 2012, Lagneaux had no right of action in tort to assign to the Boones because Lagneaux's tort claims had prescribed eight years earlier.

With regard to the assignment by Primeaux, also in September 2012, Primeaux could not assign contractual rights under the leases because Primeaux did not acquire contractual rights upon its purchase from Lagneaux in 2003. If Primeaux thought it had to take a lower sale price from Boone in August of 2005 because of damage by a lessee, it would have acquired that knowledge at least by the time of sale and would have had a year, or until August of 2006, to bring its tort suit. However, Primeaux did not take a lower price; since it paid only $105,000.00 for the property in 2003 and sold it to the Boones for $120,000.00 in 2005, there had been no diminution of value. In any event, when Primeaux executed the assignment in 2012, it had no right of action to assign to the Boones. Accordingly, the Boones did not obtain any tort or contract rights from the previous owners via the assignments to sue for damages caused prior to the act of sale in 2005.

11

The Boones signed affidavits stating that Lagneaux and Primeaux intended to assign contractual rights to the Boones in the assignments where they referenced *all rights and causes of action*. That is not what these assignments, the acts of sale, or any other leases or documents in the record show. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. When EnerQuest asserted in its motion for summary judgment that the Boones would not be able to prevail on its claims for damages against EnerQuest, the burden shifted to the Boones to show that they could prevail at trial:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2).

The only evidence adduced by the Boones are the eleventh-hour assignments which do not convey any valid tort or contract claims to the Boones. Accordingly, we find that the assignments do not provide the Boones with a right of action in tort or in contract to sue EnerQuest for damages to the property prior to the Boones acquisition of the property.

*Stipulation Pour Autrui*

The Boones assert that their contract claims are still valid because, while not actual parties, they are third party beneficiaries to the surface lease that Lagneaux granted to EnerQuest in 2002, pursuant to La.Civ.Code art. 1978.[2] They cite *Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 02-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, *writs denied*, 03-1585 and 03-1624 (La. 10/31/03), 857 So.2d 476. There, the original 1926 lease provided (emphasis added): "Grantee shall be responsible *for all damages caused* by his operations." This language was found to create a stipulation *pour autrui* in favor of the Hazelwood corporation, which acquired ownership in 1991 (Hazelwood was owned by the Edmunston family who had owned the property since 1968). The court in *Hazelwood Farm, Inc.*, 844 So.2d 380, explained that this finding was the law of the case based upon a prior appeal, which more thoroughly analyzed the issue.

More specifically, in *Hazelwood Farm, Inc. v. Liberty Oil & Gas Corp.*, 01-345 (La.App. 3 Cir. 6/20/01), 790 So.2d 93, *writ denied*, 01-2115 (La. 7/26/01), 794 So.2d 834, the plaintiff was found to have no right of action as a party to, or as an assignee of, a mineral lease because, as here, the vendor before the plaintiff's vendor had reserved the mineral rights to himself. The court did, however, find that the language of the original lease, obligating the grantee/lessee to pay for *all damages caused* by its operations, conferred a benefit on the current owner, Hazelwood:

> Our jurisprudence recognizes several factors which must
> be considered in determining whether a contract provides

---

[2]"A contracting party may stipulate a benefit for a third person called a third party beneficiary. Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement." La.Civ.Code art. 1978.

for a stipulation *pour autrui*. These factors are enumerated in *Andrepont v. Acadia Drilling Co.*, 231 So.2d 347, 351, 255 La. 347 (1969) as:

> (1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee (sic) will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended. See Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 58 (1936).

*Hazelwood Farm, Inc.*, 790 So.2d at 100.

The *Hazelwood* court did not specifically apply the individual factors above, but rather focused upon language of the lease in *Andrepont*, and the almost identical language in the lease in *Hazelwood*. In *Andrepont*, a share crop tenant and the landowner entered into a verbal lease wherein the landowner allowed the tenant to farm soybeans on the land in return for twenty percent of his crop. Later, the owner also granted the oil and gas defendant a lease; but the owner negotiated broader language so that the final version of the lease protected not just the owner/lessor but also protected the farmer/lessee, Mr. Andrepont:

> The printed form used as the oil and gas lease initially read, "The Lessee shall be responsible for all damages to timber and growing crops of the Lessor caused by Lessee's operations." *Id.* at 349. The words "to timber and growing crops of Lessor" were then deleted so that

14

the lease read "The Lessee shall be responsible for all damages caused by Lessee's operations." *Id.*

Upon reviewing this language, the Louisiana Supreme Court found it to create a stipulation *pour autrui*. In doing so, the court noted, "[Andrepont] is seeking to enforce a benefit stipulated in his favor by the landowner lessor as a condition of a commutative contract between the landowner lessor and the oil and gas lessee. Defendants, as assignees of the oil and gas lessee, are, therefore, parties to the contract in which the stipulation is a condition...." *Id.* at 350. Therefore, the court reasoned that Andrepont, as beneficiary of the stipulation, had a direct right of action against the lessee to recover his damages.

*Hazelwood Farm, Inc.*, 790 So.2d at 100-01.

Because the language in the lease was strikingly similar to that in *Andrepont*, the *Hazelwood* court interpreted the lease as providing a stipulation *pour autrui* in favor of Hazelwood. Likewise, in *Magnolia Coal Terminal v. Phillips Oil Company*, 576 So.2d 475, 477 (La. 1991) (emphasis added), also cited by the Boones, the lease stated, "Lessee shall pay *for all damages caused* by Lessee's operations . . . ."

*Magnolia Coal*, 576 So.2d 475, a highly distinguishable case, did not discuss stipulation pour autrui but did allow the new landowner, Magnolia, to recover against the current lessee, Phillips Oil, quoting the above language from the mineral lease retained by the original owners. The suit was for continuing damage caused by the improper plugging of a well that was leaking a gallon of oil per hour. During Magnolia's purchase negotiations, Phillips' predecessor, Aminoil, which later merged with Phillips, took responsibility for plugging the well and cleaning the property; and it agreed *in writing* to take care of the problem. Two years after Magnolia spent almost $12 million to purchase and begin developing the 2,200-acre tract, Aminoil abandoned its efforts, but oil pockets

15

reappeared two months later. Magnolia lost its financial support on an $86 million terminal and stopped construction due to contract failures. The Louisiana Supreme Court awarded Magnolia $2.1 million for surface damages.

In discussing jurisdictional conflicts, where the commissioner of conservation had wrongly found the well to have been properly plugged, the court characterized Magnolia's action for property damages as a private and contractual cause of action not in the purview of the mineral code. The court then stated: "Magnolia's right to recover damages is a property right arising out of the original lease and attached to the property." *Id*. at 483. The court cited *Andrepont*, 231 So.2d 347, for this proposition. Since *Andrepont* does not contain this language, we surmise that it is a reference to the landowner's right to receive its part of the damages before or separately from the damages paid to the share cropper, Andrepont, by the oil and gas lessee, pursuant to La.R.S. 9:3204. In spite of the contextual dissimilarities, it is this quote from *Magnolia Coal* that the plaintiffs have cryptically and improvidently pulled from the case without further analysis and without reconciling it with *Eagle Pipe* twenty years later.

Here, the defendant EnerQuest, predecessor of the defendant Petro "E," did not agree to do anything on the property, but rather, completely vacated the property and sold all of its assets *and* obligations a year before the Boones purchased the property, as discussed fully below. Moreover, the Boones did not introduce the mineral lease for a comparison of the language. And here, there was no continuing damage by EnerQuest, as a continuing tort is one in which the tortfeasor "perpetuates the injury through overt, persistent, and ongoing acts." *Eagle Pipe*, 79 So.3d at 279. We find no support for the plaintiffs' position in the *Magnolia Coal* case.

16

The only lease in the record between a former owner and EnerQuest, is the 2002 surface lease granted by Lagneaux before its sale of the property to Primeaux in 2003. The surface lease that Lagneaux granted to EnerQuest did not contain language similar to the above language or address damages in any manner. It allowed EnerQuest to use the surface of the land for constructing and accessing its facilities and obligated EnerQuest to remove its fixtures and restore the land as nearly as practicable to its original condition within six months after the lease expired. It acknowledged the receipt of adequate and sufficient consideration for this access, presumably the lease payments and any other income from the minerals by which Lagneaux would profit when EnerQuest brought the product to the surface. It extended the provisions of the lease to the heirs, devisees, executors, administrators, representatives, successors, and assigns of the lessor and the lessee. However, the provisions it extended did not include money damages or property damages.

Nor could the parties have intended in 2002 for a benefit to inure to a future purchaser who owned no mineral rights and who stood to gain nothing by an oil and gas lessee's presence on the land. There could not be an acknowledgment of consideration received in such scenario. Moreover, under the *Andrepont* factors, there was no legal or factual relationship between EnerQuest and the Boones. Mr. Boone admitted in his deposition that he had never met Lagneaux.

The intention of the parties and the language regarding damages is paramount in the jurisprudence on stipulations *pour autrui*. In *Broussard v. Northcott Exploration Co., Inc.*, 481 So.2d 125, 127 (La.1986), the Louisiana Supreme Court found no stipulation *pour autrui* in favor of the plaintiff even though an attempt to modify the language, similar to *Andrepont*, was made. The

17

court reiterated that a stipulation *pour autrui* exists when some advantage to a third

person is created *as a condition or consideration* of a commutative contract:

> In order to determine if a stipulation exists, we must look to the intention of the parties at the time the mineral lease was negotiated. This can best be accomplished by comparing the standard damage clause found in the original version of the mineral lease to the modified version agreed to by the parties. The unmodified version of the Damage Clause read as follows:
>
>> "The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations."
>
> In negotiating the mineral lease the parties modified the phrase "for all damages to timber and growing crops" to read "for all surface damages." However, they did not modify the mineral lease to expand [the defendant/lessee's] liability beyond the "damages of the lessor." For this reason, we can easily distinguish *Andrepont v. Acadia Drilling Co.*, 255 La. 347, 231 So.2d 347 (1969), and *Hargroder v. Columbia Gulf Transmission Co.*, 290 So.2d 874 (La.1974).

Likewise, in *Lejeune Bros., Inc. v. Goodrich Petroleum Co.*, 06-1557,

p. 8 (La. App. 3 Cir. 11/28/07), 981 So.2d 23, 29, *writ denied*, 08-298 (La. 4/4/08),

978 So.2d 327, the court compared the lease at issue to the lease in *Broussard* and

found no stipulation *pour autrui* in favor of the plaintiffs:

> As in *Broussard*, the damage clause in the Baez Lease was similarly modified. The original damage clause . . . read, "The Lessee shall be responsible for all damages to timber and growing crops of Lessor caused by Lessee's operations." However, in the final version the words "timber and growing crops of" were struck out, and the clause read "The Lessee shall be responsible for all damages to Lessor caused by Lessee's operations." Thus, just as in *Broussard*, the damages permitted by the Baez Lease were limited to the damages suffered by the Lessor, Mr. Baez. The trial court did not err in finding LeJeune Brothers was not a third party beneficiary of the Baez Lease.

In *Wagoner v. Chevron USA Inc.*, 45,507 (La.App. 2 Cir. 8/18/10) 55 So.3d 12, *writ denied*, 10-2773 (La. 3/2/12), 83 So.3d 1032, which we find particularly illustrative due to the factual similarities involving the same legal issues as those herein, the second circuit found no stipulation *pour autrui* in favor of the current owner pursuant to a former lessee's mineral lease with a former owner. Based upon the subsequent purchaser doctrine, finding no conveyance of rights in the acts of sale, and finding no language conferring third party rights such as the language in *Magnolia Coal Terminal*, the *Wagoner* court found that the plaintiff had no right to sue for pre-acquisition damages under the mineral leases obtained by three former oil and gas lessees. The assignees/lessees who were still operating on the land after the plaintiff's purchase of the property were not dismissed in the judgment affirmed.

More recently than *Andrepont*, the Louisiana Supreme Court has identified three criteria for determining whether contracting parties have provided a benefit for a third party:

> 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee. . . .
>
> The most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. A stipulation *pour autrui* is never presumed. The party claiming the benefit bears the burden of proof.

*Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 05-2364, pp. 8-9 (La. 10/15/06), 939 So.2d 1206, 1212 (citations omitted) (footnote omitted); La.Civ.Code art. 1978; La.Civ.Code art. 1831; *see also Eagle Pipe and Supply,*

19

*Inc.*, 79 So.3d 246.  For the reasons sated, we find that the plaintiffs have not met their burden of proving that they are third party beneficiaries under the contracts as asserted.

### *The 2002 Surface Lease*

The Boones argue that the 2002 surface lease between Lagneaux and EnerQuest had a ten-year term; that it was effective until 2012 which included the ownership of the Boones who purchased the property in August, 2005; and that there was no evidence that it was assigned to another operator.  We disagree.  As previously discussed, Lagneaux withheld its leases and contractual rights from the assignment to the Boones, and in any event the surface lease did not provide for damages.  It only provided for restoration which was not due until six months after the lease expired.  Also as discussed, the Boones were not parties to the lease, and the lease did not provide a stipulation *pour autrui* in favor of the Boones.  Moreover, the lease had an effective date of August 1, 2002, meaning that it would have expired as of August 1, 2012, and the Boones did not obtain the assignments until late September, 2012.  Accordingly, "it was impossible to transfer rights to an assignee under an expired . . . lease." *See Lejeune Bros., Inc.*, 981 So.2d at 28.

In addition to there being no valid assignment from Lagneaux, the record is clear that EnerQuest ceased its operations on the property as of April 30, 2004, and sold all of its physical and contractual rights, including its leases, to Petro "E."  On April 17, 2004, EnerQuest executed an "Assignment and Bill of Sale" to Petro "E" of all of its rights, title and interest in the subject property.  The sale also included all personal property, fixtures, facilities, tanks, pumps, equipment, machinery, wells, wellheads, licenses, permits, easements, rights of

20

way, leases, contracts, operating and other agreements, "whether of record or not," relating to the properties. This sale was effective on May 1, 2004.

The EnerQuest conveyance to Petro "E" included (emphasis added) "[a]ll rights incident to the Properties, *including without limitation, all rights with respect to the use and occupation of the surface* of and the subsurface depths under the Properties." The sale and assignment obligated Petro "E" to plug and abandon all wells as required by regulatory authorities, to level all dumps, fill in all pits, remove all debris, and otherwise restore the surface of the land as required in the mineral servitude or leases, and to comply with all applicable orders and regulations. Thus, the surface lease rights and obligations were sold and assigned to Petro "E," and EnerQuest had no presence on the property and no interest in the property, physical, contractual, or otherwise, after April 30, 2004, over a year before the plaintiffs purchased the property on August 26, 2005.

The Boones argue that EnerQuest operated on the property until 2004, and that a personal action has a liberative prescription of ten years under La.Civ.Code art. 3499. That article states: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years." La.Civ.Code art. 3499. This article follows numerous other articles providing for shorter, more specific prescriptive periods, including previously discussed article 3492 which governs claims for property damage and provides a one-year prescriptive period. With regard to a ten-year prescriptive period for a personal action arising in contract, we have already found that the Boones have failed to introduce any evidence of a contract by EnerQuest that grants them a right of action against EnerQuest. Accordingly, the Boones have not produced evidence that provides them a right of action in tort or contract against EnerQuest.

21

***Relation Back***

In September 2012, two and a half years after filing suit in May 2010, the Boones filed a second supplemental petition. The petition attached the newly obtained assignments, attempted to create rights in the Boones as assignees of the former owners, reiterated the earlier causes of action, and added causes of action for fraud, conspiracy, concerted action, and concealment. For the first time, it alleged a cause of action under the Louisiana Environmental Quality Act, La.R.S. 30:2271-2281. The Boones assert that the new petition related back to the original petition in 2010. We must disagree.

Even if the September 2012 assignments from the previous owners had conferred valid and timely rights, the assignments arose two and a half years after the original petition was filed in May of 2010. As discussed, the tort rights had prescribed before the original petition was filed, and the assignments did not confer a right of action in contract. The rights sought to be bestowed in the assignments were not exigible at the time of suit in 2010. Therefore, the claims in the new petition were supplemental, not amending, no matter how the caption of the petition reads, and the relation back of La.Code Civ.P. art. 1153 applies only to amending petitions. *Smith v. Cutter Biological*, 99-2068 (La.App. 4 Cir. 9/6/00), 770 So.2d 392.[3]

An "untimely filed original petition does not support the relation-back of a new cause of action[.]" *Allen v. State, Dept. of Public Safety & Corrections*, 12-430, p. 6 (La.App. 3 Cir. 11/7/12), 107 So.3d 106, 110 (quoting

---

[3]Under La.Code Civ.P. art. 1151, a party may *amend* its petition if the new claims accrued *prior* to filing the original suit; under Article 1155, a party may be permitted to file a *supplemental* petition setting forth related items of damage or causes of action that became exigible *after* the original petition was filed; but the relation back of Article 1153 applies only to the *amended* petition. *See Cutter Biological*, 770 So.2d at 411-12.

*Cutter Biological*, 770 So.2d at 413). Nor does an original petition filed by a party without a right of action to file it. *See Naghi v. Brener*, 08-2527 (La. 6/26/09), 17 So.3d 919.

In *TCC Contractors, Inc. v. Hospital Service Dist. No. 3 of Parish of Lafourche*, 10-685, p. 22-23 (La.App. 1 Cir 12/8/10), 52 So.3d 1103, 1116-17, the first circuit found that claims arising via an assignment did not become exigible prior to the date of the assignment:

> [O]ur law, as interpreted in the jurisprudence, holds that in order for the doctrine of relation back to apply and to circumvent the effect of prescription, a new cause of action asserted in an amended petition (1) must have been in existence at the time the original petition was filed; (2) must have been vested in the plaintiffs at that time; and (3) must arise out of "the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See* La. C.C.P. art. 1153.
>
> ....
>
> Because a civil action by definition can be brought only by a person having a right of action, it stands to reason that an action instituted by a person determined to have no right of action cannot serve as an "action" sufficient to interrupt prescription. See La. C.C.P. art. 681 and La. C.C. art. 3462. . . . The relation back theory embodied in La. C.C.P. art. 1153 assumes that there is a legally viable claim to which the pleading can relate back. *Naghi v. Brener*, 08-2527, p. 10 (La. 6/26/09), 17 So.3d 919, 925. . . . Because of the "strictly personal" character of the right to file suit, the plaintiffs' right to do so can be given legal effect only from the effective date of the assignment, and the assignment could not retroactively cure the initial absence of a right of action by the plaintiffs.

23

Accordingly, the claims asserted in the Boones' second supplemental petition do not relate back to the original petition.[4] Moreover, as fully discussed above, the assignments do not confer existing rights. Additionally, the Boones have not shown that they had an exigible claim under La.R.S. 30:2276 at the time of the original petition or at the time the LEQA claim was first alleged in the second supplemental petition. Contrary to the allegations in the petitions, Mr. Boone testified in his deposition on May 8, 2013, that he had not incurred any remediation costs as required by La.R.S. 30:2276(G)(3). *See Margone, LLC v. Addison Resources, Inc.*, 04-70 (La.App. 3 Cir. 12/15/04), 896 So.2d 113, *writ denied*, 05-139 (La.3/24/05), 896 So.2d 1039. Further contrary to the Boones' assertions in brief, the original and first supplemental petitions do not assert solidary liability, and the additional claims and causes of action in the second supplemental petition do not relate back to the original petition.

V.

## CONCLUSION

Based upon the foregoing, we affirm the trial court's judgment granting the motion for summary judgment and exception of prescription in favor of EnerQuest Oil & Gas, LLC. Costs of this appeal are assessed to the plaintiffs, Carlos and Lori Boone.

**AFFIRMED**.

---

[4] The Boones' characterization of their status change as one of a simple change in capacity and therefore analogous to *Giroir v. South Louisiana Medical Center, Div. of Hospitals*, 475 So.2d 1040 (La.1985), is misplaced. The wrongful death claim that was allowed to relate back in *Giroir* had accrued prior to the time of the filing of the original petition.

24