# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 21, 2013

No. 12-30306

Lyle W. Cayce
Clerk

BRANNON PROPERTIES, LLC,

Plaintiff - Appellant

v.

CHESAPEAKE OPERATING, INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:11-CV-0071

Before HIGGINBOTHAM, CLEMENT, and HAYNES Circuit Judges.

PER CURIAM:[*]

This diversity case turns on the interpretation of a Louisiana statute requiring the operator of an oil or gas well within a drilling unit to provide a detailed report to the unleased mineral owners. Brannon Properties ("Brannon") sued Chesapeake Operating, Inc. ("Chesapeake"), contending that the report Chesapeake provided it under this statute did not meet the "detailed"

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30306

requirement. The district court granted summary judgment to Chesapeake, and Brannon appeals. We REVERSE and REMAND.

## FACTS AND PROCEEDINGS

Under Louisiana law, operators of oil or gas wells within a drilling unit "shall issue" to owners of land in the unit "a sworn, *detailed*, [and] itemized statement . . . contain[ing] the costs of drilling, completing, and equipping the unit well." LA. REV. STAT. ANN. § 30:103.1 (emphasis added). If an operator fails to furnish this report within the time frame specified, the operator "shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well." *Id.* at § 30:103.2.

Brannon owns property in Caddo Parish, Louisiana that was unitized by the Louisiana Office of Conservation. Chesapeake currently operates one actively producing well in this unit. As an unleased mineral owner, Brannon requested a report pursuant to § 30:103.1. Chesapeake timely provided a report consisting of eighteen pages of itemized entries. Each entry gave the date and amount of the expenditure, as well as whether it was an "Intangible Drilling and Completion" cost or a "Tangible Drilling and Completion" cost, but no additional detail. Brannon brought suit against Chesapeake, seeking a court order that Chesapeake had forfeited its right to demand contribution for the well's drilling and operating costs because its report was insufficiently detailed to comply with the statute.

After a hearing, the district court granted Chesapeake's motion for summary judgment, concluding that Chesapeake's report contained sufficient detail. In reaching this conclusion, the court noted initially that since "there is absolutely no case law" on the issue of what is "detailed enough" to meet the statutory requirement, it was forced to conduct its own interpretation of the provision. The court first looked to the plain meaning of the text. It determined

2

that "the plain language and if you use the [Oxford English Dictionary], then this [report] isn't, quote, detailed enough." Nevertheless, it ultimately found that the report was "detailed enough, because the purpose of the statute is that you alert these non-participants as to how much it has cost and how long before you begin drawing your check." Chesapeake's report accomplished this purpose. Thus, in the district court's opinion, Chesapeake had complied with § 30:103.1. Brannon appeals.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same Rule 56 standard as the district court. *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 (5th Cir. 2010). "Summary judgment is warranted where there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law." *Id.* (alteration in original) (citation and internal quotation marks omitted). We review the district court's interpretation of a statute *de novo*. *Woodfield v. Bowman*, 193 F.3d 354, 358 (5th Cir. 1999).

## DISCUSSION

Brannon claims that the district court erred in concluding that Chesapeake's initial report was sufficiently detailed to satisfy § 30.103.1. It contends that, under the plain language of the statute, the report failed to satisfy any commonly accepted definition of "detailed." Brannon further argues that the district court violated the rules of statutory construction when, notwithstanding the unambiguous text, it went on to consider the purpose of the statute. Finally, Brannon contends that, even if the district court properly considered the purpose of the statute, the court misunderstood that purpose and erred in finding that Chesapeake's report fulfilled that purpose. We agree.

The district court's grant of summary judgment was erroneous both because it looked to the purpose of the statute when the provision's text was unambiguous and because the purpose it considered is contravened by the

statutory language. Looking first to the text of § 30.103.1, the district court determined that, based on the plain language of the law, Chesapeake's report was not "detailed." This conclusion is correct and should have ended the court's statutory interpretation.

The district court determined that "if you use the O.E.D." (Oxford English Dictionary) definition of "detailed," the report was not "detailed enough."[1] In making this determination, the district court implicitly concluded that, on this point, the statute "is sufficiently unambiguous to foreclose any contention" that the report provided enough information to meet the statutory requirement of detail. *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 123 (1993). Although the statute does not specify which details a report must contain, that lack of precision does not necessarily make the provision ambiguous. *See State v. Evans*, 38 So. 2d 140, 142-43 (La. 1948) ("The word 'prospect' has a well defined and a common accepted meaning. . . . The same may be said of 'mechanical devices'. It would be folly for the Legislature to define words in an act that have a common accepted meaning. . . . The ordinary man has no difficulty in understanding what prospecting for oil with mechanical devices means, especially when these phrases are used in connection with the oil industry. It is not necessary to state any and every mechanical device that might be used in the discovery of minerals in the statute."); *see also Hamling v. United States*, 418 U.S. 87, 111 (1974) ("That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous.").

Here, the district court determined that, given the commonly-understood, dictionary definition of "detailed," the amount of information in Chesapeake's report was not reasonably "detailed enough." *See In re La. Health Serv. &*

---

[1] Brannon points out that the Oxford English Dictionary defines "detailed" as "abounding in details, minute, particular, circumstantial."

No. 12-30306

*Indem. Co.*, 749 So. 2d 610, 616 (La. 1999) (explaining that a statute is ambiguous if it is susceptible of two reasonable interpretations).  Because the only details provided by Chesapeake's report (in addition to the cost) were the date and whether the expenditure was for tangible or intangible drilling costs, we agree that the report did not satisfy the plain meaning of "detailed."  An ordinary man understands  what "detailed" means, especially when the term is used in connection with a report informing the unleased mineral owner of the "costs of drilling, completing, and equipping the unit well." *See Evans*, 38 So. 2d at 143.  It is not necessary to state each detail that must be included in the report. *See id.*  The statute clearly connects the costs reported to the benefits received in exchange.  The "detailed" requirement, therefore, must mean that the report has to relate the cost to the benefit: it must tell the unleased mineral owner what it is getting for its money.

For example, the subsequent quarterly reports in the record that Chesapeake provided Brannon were detailed because they included, in addition to a vendor name and invoice number, a *description of the service or parts provided* (e.g., "NSTLL VLVS" for $232.50 and "BONNET/SEAL KIT" for $864.17).  Chesapeake's initial report to Brannon for another oil well satisfies the statutory requirement for the same reason.  It, too, had a shorthand description of the part provided or service rendered for each itemized expenditure (e.g., "GATE GUARD" for $2,248.00 and "CALIBRATE CHOKE" for $120.00).   These reports, moreover, show that Chesapeake could and, as a standard practice, did provide more information to satisfy the statutory requirement of a "detailed" report.

The district court's conclusion that the report was insufficiently detailed under the unambiguous language of  § 30.103.1 resolves the case because courts only look to the purpose of a statute if the language is ambiguous. *See* LA. CIV. CODE ANN. art. 9 ("When a law is clear and unambiguous and its application

does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); *see also* LA. CIV. CODE ANN. art. 11 ("The words of a law must be given their generally prevailing meaning."); *In re La. Health Serv.*, 749 So. 2d at 615 ("[L]egislative intent is not the appropriate starting point for statutory interpretation. Rather the appropriate starting point is the language of the statute itself." (citations omitted)). The district court should have granted Brannon's motion for summary judgment based on the statute's plain language. It should not have proceeded to examine the report in light of the statute's purpose.

Even if it had been proper for the court to consider the purpose of the statute, the purpose it used in its analysis cannot be correct. To assess the purpose of the statute, the district court looked to a state appellate court opinion, which concluded, without citation, that the laws were enacted "to provide a procedure by which the owner of unleased lands in a drilling or production unit could have the amount of drilling costs fixed, so that the remaining proceeds of the sale of production could be released and he could obtain his proportionate part of those proceeds without too great a delay." *Scurlock Oil Co. v. Getty Oil Co.*, 324 So. 2d 870, 876 (La. Ct. App. 1975). But, as the district court noted, such a purpose would be fulfilled if the report simply contained a lump sum of the cost of the well. Yet the statute requires that the report be itemized as well as detailed. The itemization requirement strongly suggests that the Louisiana legislature intended the statute to do more than simply notify the unleased mineral owner of the drilling costs. Because we have no evidence before us about what this additional purpose could have been, it is impossible for us to determine whether Chesapeake's report fulfilled that purpose. Thus, the analysis of the statute's purpose does not support summary judgment for Chesapeake.

No. 12-30306

## CONCLUSION

Under the plain language of the statute, Chesapeake's initial report was insufficiently detailed to comply with its reporting requirements. Because of Chesapeake's failure to provide a report that comports with § 30.103.1, Brannon need not contribute to the costs of the drilling operations of Chesapeake's well for the period covered by the deficient report. REVERSED and REMANDED for proceedings consistent with this opinion.