STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-410


XXI OIL & GAS, LLC

VERSUS

HILCORP ENERGY COMPANY


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20115292
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters, and John E. Conery, Judges.


**AFFIRMED.**


Guy E. Wall
Wall, Bullington & Cook, LLC
540 Elmwood Park Boulevard
Harahan, LA 70123
(504) 736-0347
COUNSEL FOR PLAINTIFF/APPELLEE:
    XXI Oil & Gas, LLC

Andrew J. Halverson
Milling Benson Woodward, L.L.P.
P. O. Box 51327
Lafayette, LA 70505-1327
(337) 232-3929
COUNSEL FOR DEFENDANT/APPELLANT:
    Hilcorp Energy Company

**SAUNDERS, Judge.**

This appeal arises from a partial summary judgment granted in favor of XXI Oil & Gas, LLC (hereinafter "XXI"), the lessee of a number of mineral leases in a drilling unit operated by Hilcorp Energy Company (hereinafter "Hilcorp"). In granting the motion, the trial court found that Hilcorp should be penalized under La.R.S. 30:103.2 for failing to provide a sworn, detailed, itemized statement of costs to XXI as required by La.R.S. 30:103.1 (hereinafter "the statute"). Hilcorp now appeals. For the reasons discussed herein, we affirm.

FACTS AND PROCEDURAL HISTORY

On January 11, 2011, Hilcorp recompleted the well in the drilling unit at issue and began producing. In February 2011, XXI acquired a number of mineral leases within the unit, representing about twenty percent of the unit.

On April 21, 2011, XXI sent a letter by certified mail, return receipt requested, to Hilcorp requesting that Hilcorp provide:

> an initial report containing the costs of recompleting said unit well, or quarterly reports containing the total amount of oil, gas, or other hydrocarbons produced from the lands covered by XXI's mineral rights during the previous quarter, the price received from any purchase of unit production, quarter operating costs and expenses or any additional funds expended to enhance or restore the production of said well, … an initial report containing the costs of recompleting the unit well with detailed supporting invoices, … the total amount of oil, gas, or other hydrocarbons produced from the unit, the price received from any purchaser of unit production, the operating costs and expenses, and any additional funds expended to enhance or restore the production of the unit well.

Hilcorp had not yet provided the information required by the statute.

On the same day, before receiving XXI's letter, Hilcorp sent XXI a letter, attaching an authority for expenditure ("AFE") report, which included cost estimations and an invoice for $40,737.33 described as "cash advance on actuals through 2/2011." The letter explained that the unit well had been "shut-in" since

March 28, 2011, and would be returned to production shortly. The AFE, dated January 26, 2011, contains itemized costs to recomplete the well and states that the well had casing damage and would not flow. It includes no other revenue information or amounts. The statement does include specific estimations of costs of transportation ($500), miscellaneous ($20,000), contingencies ($25,525), perforating ($64,000), supervision/consultation ($5,000), well control insurance ($1,000), and road and location costs ($500,000), totaling $616,025 of intangible completion costs. The AFE was signed by Foster Hagen of XXI on May 20, 2011, under a line reading "Participant Approval." The statement was also signed by two representatives of Hilcorp under a line reading "Hilcorp Energy Company Approvals."

On May 20, 2011, XXI notified Hilcorp that it elected to participate in the recompleted unit well. On June 13, 2011, XXI sent Hilcorp a second letter stating that because Hilcorp had failed to provide XXI with a "sworn, detailed statement of revenues and expenses attributable to the above referenced well within 90 days of its completion and within thirty days of receipt of my April 21, 2011 letter," Hilcorp could not deduct the costs of completing or operating the well from XXI's share of the revenues. Still, Hilcorp did not respond with a statement of costs in compliance with the statute.

XXI filed suit against Hilcorp on September 9, 2011, asserting a claim under La.R.S. 30:103.1 and La.R.S. 30:103.2. Hilcorp responded by filing a peremptory exception of no cause of action, which was denied by the trial court and affirmed by this court.

XXI filed a motion for partial summary judgment on the issue of whether it is entitled to the penalty for noncompliance with the statute, namely that operation costs should not be deducted from XXI's share of revenues. The trial court held a

2

hearing and granted the motion in favor of XXI. The trial court noted in its oral reasons for its judgment that Hilcorp did not comply with the statute because the statement of costs it submitted to XXI was neither sworn nor detailed. In its judgment, the trial court declared that XXI "shall receive its share of the revenue from the Well without deduction of costs of drilling operations."

ASSIGNMENTS OF ERROR

1. The trial court erred in granting XXI's motion for partial summary judgment, where a genuine issue of material fact existed regarding whether the mineral leases that XXI acquired have been validly executed by the mineral owners of each tract of land covered by XXI's mineral leases.

2. The trial court erred in refusing to deny XXI's motion for partial summary judgment by mechanically applying the technical formalities of La.R.S. 30:103.1, a penalty statute, against Hilcorp without determining whether the intent and purpose of the statute has been satisfied.

ASSIGNMENT OF ERROR #1

This court reviews summary judgments *de novo*. *Thibodeaux v. Lafayette Gen. Surgical Hosp.*, 09-1523 (La.App. 3 Cir. 5/5/10), 38 So.3d 544. Summary judgment "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2). A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). In addition, "[i]nterpretation of a statute is a question of law that may be decided by summary judgment." *State Farm Mut. Auto. Ins. Co. v. U.S. Agencies, L.L.C.*, 05-728, p.3

(La.App. 1 Cir. 3/24/06), 934 So.2d 745, 747, *writ denied*, 06-933 (La. 6/16/06), 929 So.2d 1288.

The statute at issue, La.R.S. 30:103.1, reads in pertinent part as follows:

A. Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:

(1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.

(2) After establishment of production from the unit well, quarterly reports which shall contain the following:

(a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.

(b) The price received from any purchaser of unit production.

(c) Quarterly operating costs and expenses.

(d) Any additional funds expended to enhance or restore the production of the unit well.

The related penalty statute, La.R.S. 30:103.2, reads as follows:

Whenever the operator or producer permits ninety calendar days to elapse from completion of the well and thirty additional calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.

Hilcorp contends that XXI has not proven that its mineral leases have been validly executed by the owners of each tract of land. Thus, partial summary judgment as to whether Hilcorp is subject to the statutory penalty should be precluded by this issue of material fact, Hilcorp argues. While Hilcorp asserts that the validity of the leases is a required element for the statute to apply, it offers no supporting authority for this contention. Moreover, the issue of the validity of the

4

leases was not before the trial court when it granted the partial summary judgment now on appeal, and the trial court has not ruled on this issue. A decision on appeal of this issue would be premature. In fact, should the trial court find that XXI is not the owner of validly executed leases and XXI receives no revenues, it would receive no revenues from which to deduct production costs. For the purpose of this appeal, the issue of the validity of the leases is not relevant; whether XXI's lessors have good title is an issue suitable for a trial on the merits, and need not influence summary judgment on the issue of whether Hilcorp failed to comply with the statute.

ASSIGNMENT OF ERROR #2

Hilcorp admits that it did not comply with the technical requirements of the statute, but asserts that it achieved the intent and purpose of the statute by submitting a statement of costs in the AFE. Hilcorp suggests that since XXI elected to participate in the well after receiving the AFE, the AFE constitutes a statement of costs that satisfies the intent and purpose of the statute, rendering technical compliance with the statute unnecessary. This suggestion amounts to proposing that XXI waived its statutory right to receive a sworn, detailed, itemized statement of costs by electing to participate in the well after receiving the AFE. Strict construction leaves no room for such an argument. The statute is unambiguous in its requirements, and XXI's election to participate does not alter the clear requirements of the statute.

The first point of this court's analysis must be the language of the statute. Where the text of a statute is unambiguous, it is not the role of this court to determine its purpose, but rather to apply the law as it is written. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in

search of the intent of the legislature." La.Civ.Code art. 9. Here, we must employ strict construction to determine whether Hilcorp's statement of costs complies with the statute.

The United States Fifth Circuit Court of Appeals interpreted this statute in an unpublished opinion, *Brannon Props, LLC v. Chesapeake Operating, Inc.*, No. 12-30306, 2013 WL 657781 (5th Cir. Feb. 21, 2013), wherein the court found that a statement of costs was not adequately detailed under the statute where each cost was described only as "tangible" or "intangible." The court noted that "[a]lthough the statute does not specify which details a report must contain, that lack of precision does not necessarily make the provision ambiguous." *Id.* The court concluded that the term "detailed" in the statute is unambiguous given the context of a report informing the unleased mineral owner of the costs. "The statute clearly connects the costs reported to the benefits received in exchange. The 'detailed' requirement, therefore, must mean that the report has to relate the cost to the benefit: it must tell the unleased mineral owner what it is getting for its money." *Id.* (internal citations omitted).

We agree with the Fifth Circuit that the requirement that the statement be detailed is not ambiguous. We find there is no ambiguity in the statute, and the appellant presents no argument to the contrary. Accordingly, we hold that the statute is unambiguous, and thus its language is subject to strict construction.

This court notes that the list of cost estimations in the AFE provided by Hilcorp is, in large degree, lacking detail that might seem relevant to such a document. Inasmuch as this is a summary judgment proceeding, the court pretermits the question of whether Hilcorp's statement is adequately detailed, as it is not necessary to decide the case.

The requirement that the statement be sworn invites no inquiry into the intent and purpose of the statute. A statement is either sworn or it is not. It is clear from the record that Hilcorp's statement was not. Regardless of whether Hilcorp's statement substantially supplied adequate information, the statute makes clear, without any additional qualifying or modifying language, that the statement must be sworn. XXI has a serious stake in the reliability of the statement of costs. An unsworn statement leaves mineral lessees such as XXI vulnerable to a degree that this statute seeks to prevent. For that reason, the requirement that such a statement must be sworn shall be enforced. The statement submitted by Hilcorp did not comply with this requirement.

CONCLUSION

The trial court ruled, and we agree, that Hilcorp's actions and omissions amounted to a substantial breach of the disclosure requirements of La.R.S. 30:103.1. The statement of costs Hilcorp sent to XXI was not sworn, and thus was inadequate under this statute. For this, La.R.S. 30:103.2 forfeiture is the clear remedy. In conclusion, we affirm the trial court's ruling granting partial summary judgment. All costs of this appeal are assessed to Appellant, Hilcorp.

**AFFIRMED.**

7