SUSAN M. CHEHARDY, Chief Judge.
| ¡Appellant, SLAS Marine, Inc. (“SLAS”), appeals from the judgment of the trial court in which the court found valid and binding a recorded lease agreement between a third party and appellee, John J. Pounders, and denied SLAS’s rule to evict Mr. Pounders. For the reasons that follow, we reverse the judgment of the trial court finding the lease agreement valid and binding, vacate the denial of the rule for eviction, and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
Located at 5057 Kenal Road in Lafitte, Louisiana is a plot of waterfront land 70 feet wide by 200 feet deep, upon which is located a marina (hereinafter, “the property”). At the time of the hearing on the rule for eviction in May 2014, Mr. Pound-ers had been operating a charter fishing company on this property for twenty-three years.
On June 15, 2011, Hai Du Duong, in his capacity as manager of B.J. Seafood Enterprise, LLC (“B.J. Seafood”), executed a quitclaim deed by which, for a sum of $2,500,000.00, title to the property was transferred to Seaway Properties, Inc. (“Seaway”), of which Mr. Duong was the director.
IsOne year later, on June 15, 2012, Mr. Duong, on behalf of B.J. Seafood, executed a written lease, in which the property was leased to Mr. Pounders for a term of five years beginning on January 1, 2012 and ending December 31, 2017[1] for the rent of *645 $350.00 per month. This lease was filed in the Jefferson Parish conveyance records on June 29, 2012.
On October 28, 2013, Lina Chu, in her capacity as president of SLAS, executed an Act of Credit Sale for the purchase of the property from Seaway for $3,000,000.00. Soon thereafter, Ms. Chu received and deposited a $700.00 check from Mr. Pounders dated November 20, 2013 made payable to “Seaway Marina” as rent for the months of November and December, 2013. Then, upon learning that Ms. Chu intended to increase the rent, Mr. Pounders disclosed to Ms. Chu a copy of his lease agreement with B.J. Seafood. From then on, Ms. Chu did not accept payment from Mr. Pounders.
On January 9 and March 11, 2014, SLAS sent notices to vacate to Mr. Pounders by certified mail, of which he acknowledged receipt. Mr. Pounders refused to vacate the property. Consequently, on March 28, 2014, SLAS filed a rule for eviction. The rule was heard on May 6, 2014. On May 8, 2014, the trial court rendered judgment, finding the lease to be valid and binding and denying the rule for eviction.
On May 19, 2014, SLAS filed a motion for new trial, which it supplemented with an amended motion for new trial on August 12, 2014. Therein, SLAS sought a new trial pursuant to La. C.C.P. art. 1972(1) and (2), and alternatively, to La. C.C.P. art. 1973. In accordance with La. C.C.P. art. 1972(2), SLAS argued a new trial was warranted on the basis of newly discovered evidence, namely, the testimony of Mr. Duong. SLAS averred that Mr. Duong, who frequently travels to ^Vietnam for extended periods of time, was not available before or at the time of the hearing. Mr. Duong became available after the hearing and executed an affidavit on August 6, 2014. This affidavit was attached to the motion for new trial.
In this affidavit, Mr. Duong stated that B.J. Seafood, of which he was the managing member, operated the marina from 2007 until June 15, 2011. During this term, none of the tenants who rented space at the marina had written leases. This included Mr. Pounders who had rented space at the marina for many years without a written lease. Mr. Duong further stated that he, either on behalf of B.J. Seafood or Seaway, did not knowingly sign a written lease agreement with Mr. Pound-ers. He surmised that he had mistakenly signed the purported lease agreement when it was included with documents presented to him in connection with Seaway’s refinancing of the property. He is not fluent in English and has great difficulty understanding written English. He maintains that if he had known the document was a lease agreement, he would not have signed it.
The motion for new trial was heard and denied on September 16, 2014, which was followed with written reasons on September 19, 2014. These reasons were substantially the same as those issued by the trial court in its May 8, 2014 judgment.
SLAS sought and was granted a devolu-tive appeal from the judgments denying the rule for eviction and the motion for new trial.
DISCUSSION
On appeal, SLAS raises two assignments of error: (1) the trial court erred in concluding that the lease was valid and binding; and (2) the trial court erred in declining to grant a new trial based on newly discovered evidence.
¡ sSLAS’s first assignment of error presents a question of law, which we re *646 view de novo. See Wooley v. Lucksinger, 09-0571 (La.4/1/11), 61 So.3d 507, 554.
A recorded lease of immovable property is not affected by the transfer of the property. See La. C.C. arts. 1839, 2681, 2711, 2712; Prados v. South Cent. Bell Tel. Co., 329 So.2d 744, 749 (La.1976) (“When ... the lessor sells property during the term of a recorded lease, the purchaser in the absence of a contrary stipulation is bound by the obligations of the lessor.”). In this case, the lease was recorded in the Jefferson Parish conveyance records on June '29, 2012. Therefore, if the lease is valid, it is effective against SLAS, the third-party purchaser. Accordingly, we assess the validity of the lease.
The facts before us are undisputed. The written lease agreement was entered into on June 25, 2012 between B.J. Seafood and Mr. Pounders. At that time, B.J. Seafood did not own the property; the title had been transferred to Seaway one year earlier, on June 25, 2011. Therefore, the issue before us is whether a lease agreement can be valid if executed by a party purporting to be the owner who, in fact, was not the owner of the property at the time of the agreement. The answer is yes, subject to certain conditions.
' “A lease of a thing that does not belong to the lessor may nevertheless be binding on the parties.” La. C.C. art. 2674. Official Revision Comment (a) further clarifies this article, suggesting that in the absence of ownership, the lessor must possess the property in order to effectuate a valid lease. Possession is defined as “the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his. name.” La. C.C. art. 3421. Further, “[t]o acquire possession, one must intend to possess as owner and must take corporeal possession of the thing.” La. C.C. art. 3424. 1 ^“Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing.” La. C.C. art. 3425.
 In the instant matter, B.J. Seafood transferred the property to Seaway by quitclaim deed on June 25, 2011. The record is devoid of any evidence indicating that B.J. Seafood exercised physical acts of use, detention, or enjoyment over the property. Thus, in the absence of evidence that B.J. Seafood possessed the property at the time of the lease agreement, and' because B.J. Seafood was not the owner of the property at the time of the lease agreement, on the record before us, we cannot find that the lease agreement is valid and binding.[2]
The trial court reached a different conclusion, finding that the lease agreement was valid and binding by virtue of the precarious possession of the property.[3] In making this finding, the court relied on La. C.C. art. 3429, which provides: “Possession may be exercised by the possessor or by another who holds the thing for him and in his name. Thus, a lessor possesses through his lessee.” The court reasoned that as lessor, B.J. Seafood possessed the *647 property through its lessee, Mr. Pounders, and, therefore, by virtue of this precarious possession, B.J. Seafood, although a non-owner, legitimately leased the property as lessor.
This circular logic is flawed for the obvious reason that it assumes the very premise it seeks to establish. In other words, the trial court’s reasoning permits B.J. Seafood to derive its authority to lease the property from a legal mechanism (ie., La. C.C. art. 3429) that requires B.J. Seafood to have the authority to lease the property in the first place. In essence, the trial court reasoned that B.J. Seafood is |7the lessor because B.J. Seafood is the lessor. We reject this misapplication of the law and find that the trial court erred as a matter of law.
DECREE
For the foregoing reasons, the judgment of the trial court finding the lease agreement valid and binding is reversed. The trial court’s ruling denying the rule for eviction is vacated. This matter is remanded for proceedings consistent with this opinion.

REVERSED, VACATED, AND REMANDED

. It is noted that January 1, 2012 through December 31, 2017 is a term of six years, not *645 five.

. A corporation is a separate legal entity distinct from its officers, stockholders, agents, employees or representatives. Korson v. Independence Mall I, Ltd., 593 So.2d 981, 984 (La.App. 5 Cir.1992). Based on the record before us, we can only conclude that B.J. Seafood and Seaway are separate legal entities distinct from Mr. Duong. Nevertheless, we choose to note that this case presents circumstances that suggest the possible applicability of the alter ego doctrine. The alter ego doctrine applies when individuals seek to use the corporate entity to avoid personal responsibility for debts or obligations of a corporation owned by them. Id.

. "The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession.” La. C.C. art. 3437.