STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 16-269


XXI OIL & GAS, LLC

VERSUS

HILCORP ENERGY COMPANY


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20115292
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**Pickett, J., concurs in part, dissents in part and assigns written reasons.**

**Guy Earl Wall**
**Wall, Bullington & Cook, LLC**
**540 Elmwood Park Blvd.**
**New Orleans, LA 70123**
**(504) 736-0347**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **XXI Oil & Gas, LLC**

**Robert L. Cabes**
**Andrew J. Halverson**
**Milling Benson Woodward, LLP**
**P. O. Box 51327**
**Lafayette, LA 70505-1327**
**(337) 232-3929**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Hilcorp Energy Company**

**EZELL, Judge.**

Hilcorp Energy Company appeals a trial court judgment which found it liable to XXI Oil & Gas, LLC for penalties pursuant to La.R.S. 30:103.2 in the amount of $367,231.30. For the reasons assigned in this opinion, we affirm the judgment of the trial court.

**FACTS**

On December 7, 2010, the Louisiana Commissioner of Conservation created a drilling unit designating it the Trahan No. 1 well. A prior operator drilled the unit well. Hilcorp recompleted the well, which began producing on January 11, 2011. XXI acquired mineral leases over lands located in the drilling unit in February 2011.

XXI filed suit against Hilcorp in September 2011 for its failure to provide XXI with a sworn, detailed, and itemized statement of costs as required by La.R.S. 30:103.1. The pertinent facts pertaining to correspondence between the two parties regarding the requests by XXI for information pursuant to La.R.S. 30:103.1 can be found in our previous opinion at *XXI Oil & Gas, LLC v. Hilcorp Energy Co.*, 13-410 (La.App. 3 Cir. 10/9/13), 124 So.3d 530.

In response, Hilcorp filed an exception of no cause of action claiming that La.R.S. 30:103.1 and 30:103.2 do not apply to XXI as a mineral lessee. After the trial court denied Hilcorp's exception of no cause of action, it sought supervisory writs with this court. This court found no error in the trial court's ruling and denied Hilcorp's writ application on April 17, 2012.

Subsequently, the trial court granted a partial summary judgment in favor of XXI finding that Hilcorp should be penalized under La.R.S. 30:103.2 for failing to provide a sworn, detailed, and itemized statement of costs to XXI as required by La.R.S. 30:103.1. Hilcorp then filed an appeal in this court. On appeal, this court

agreed with the trial court and held that "Hilcorp's actions and omissions amounted to a substantial breach of the disclosure requirements of La.R.S. 30:103.1 [and] [t]he statement of costs Hilcorp sent to XXI was not sworn, and thus was inadequate under this statute." *XXI Oil & Gas, LLC,* 124 So.3d at 535. This court then held that "La.R.S. 30:103.2 forfeiture is the clear remedy." *Id.*

A bench trial was held on September 21, 2015. The trial consisted of stipulations entered into between the parties and exhibits introduced into evidence. The trial court entered judgment on December 14, 2015, finding Hilcorp liable to XXI for penalties in amount of $367,231.30. This amount was calculated by utilizing the stipulated amount of revenue from the well of $1,743,355.49 to calculate XXI's share of revenue for the leases that it owns which cover 21.0646257% of the unit: ($1,743,355.49 x 21.0646257% = $367,231.30). Hilcorp then filed the present appeal.

## NO CAUSE OF ACTION

Once again, as it argued previously to the court, Hilcorp has assigned as error the trial court's application of La.R.S. 30:103.1 and 30:103.2 to XXI arguing that the statute is not applicable to mineral lessees. Hilcorp argues that the statutes refer to oil and gas interests that are not leased at all as opposed to not leased by the operator. In support of its position, it cites *TDX Energy, LLC v. Chesapeake Operating, Inc.*, 2016 WL 1179206 (W.D. La. 2016)(unpublished opinion), which held that La.R.S. 30:103.1 does not apply to mineral lessees. XXI argues that this court's previous decisions should be considered law of the case precluding review of the issue on appeal.

The law of the case doctrine embodies the principles of the binding force of trial court rulings during later stages of the proceedings, the conclusive effects of

2

appellate rulings in the trial court on remand, and that an appellate court generally does not revisit its own rulings of law on a subsequent appeal in the same case. *Kaleel v. Div. Transp.*, 00-803 (La.App. 3 Cir. 8/23/00), 769 So.2d 110, *writ denied*, 00-2976 (La. 12/15/00), 777 So.2d 1232. "'The reasons for this doctrine are: (1) avoidance of indefinite litigations; (2) consistency of results in same litigation; (3) essential fairness between the parties; and, (4) judicial efficiency."' *Id.* at 111 (quoting *Schultz v. Doyle*, 98-1113, p. 6 (La.App. 3 Cir. 2/3/99), 727 So.2d 691, 693-94, *writ denied*, 99-994 (La. 5/28/99), 743 So.2d 670). "'[T]he doctrine applies with equal force to writ decisions as it does to judgments rendered at the conclusion of the appellate process."' *Id.* An appellate court may exercise discretion in application of the doctrine and choose not to apply it in cases where the former appellate decision was clearly erroneous or if a manifest injustice would occur. *Id.*

Not only did we previously deny Hilcorp's writ application, thus recognizing XXI's cause of action under La.R.S. 30:103.1 and 30:103.2, we further found that Hilcorp's actions and omissions were a breach of La.R.S. 30:103.1 as it pertained to XXI entitling it to a forfeiture under La.R.S. 30:103.2. Furthermore, while decisions of federal courts are considered persuasive, especially cases concerning federal law, they are not binding on the courts of the State of Louisiana, especially on matters concerning the interpretation of state law which have been ruled upon. *Shell Oil Co. v. Sec'y, Revenue and Taxation*, 96-929 (La. 11/25/96), 683 So.2d 1204.

We maintain our position that when an owner or operator drills a well, and that owner or operator has no valid oil, gas, or mineral lease on a portion of that land, the mineral lessee of those portions not leased by the operator or producer of

the well has a claim to demand an accounting pursuant to La.R.S. 30:103.1, as an owner of a valid oil, gas, or mineral lease.

## COSTS OF DRILLING OPERATIONS

Hilcorp argues that the trial court erred in failing to strictly construe La.R.S. 30:103.2 by interpreting "costs of the drilling operations" to include both pre-production and post-production costs. As noted by Hilcorp, the trial court's basis for its ruling was that La.R.S. 30:103.1(A)(2)(c) requires the operator to send quarterly reports of operating costs and revenue after production has begun. Hilcorp argues that quarterly reports were required until the legislature amended La.R.S. 30:103.1 in 2001. Hilcorp further argues that had the legislature intended to include costs other than "drilling" costs, it would have delineated them as it did in the companion provision, La.R.S. 30:103.1 (i.e., completing, equipping, and operating), when the amendments were enacted. It is Hilcorp's position that "costs of the drilling operations" pertain only to those costs incurred prior to the establishment of production to drill and complete the well. Hilcorp reasons that once production has been established, drilling operations cease.

"The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law." *Pumphrey v. City of New Orleans*, 05-979, p. 10 (La. 4/4/06), 925 So.2d 1202, 1209. "The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature." *Id.* "Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent." *Id.*; La.Civ.Code art. 2.

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further

4

interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10. "Laws on the same subject matter must be interpreted in reference to each other." La.Civ.Code art. 13.

> The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law.

*Pumphrey*, 925 So.2d at 1210 (citations omitted).

Louisiana Revised Statutes 30:103.1(A) requires that operators and producers provide sworn, detailed, and itemized reports as follows:

> (1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.

> (2) After establishment of production from the unit well, quarterly reports which shall contain the following:

> (a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.

> (b) The price received from any purchaser of unit production.

> (c) Quarterly operating costs and expenses.

> (d) Any additional funds expended to enhance or restore the production of the unit well.

5

The penalty provision for failure to provide the required reports, La.R.S. 30:103.2, provides:

> Whenever the operator or producer permits ninety calendar days to elapse from completion of the well and thirty additional calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well.

Both statutes were amended by Acts 2001, No. 973. Prior to its amendment, La.R.S. 30:103.1 provided that producers and operators had to provide reports of "the costs of drilling operations." Aside from the addition of quarterly reporting requirements, the amendment provided the ninety-day completion report should specifically include "costs of drilling, completing, and equipping the unit well." La.R.S. 30:103.1(A)(1). The legislature maintained the penalty provision for failure to send the required reports as forfeiture of "the costs of the drilling operations of the well."

When reading the two statutes in conjunction with one another it is obvious that costs of drilling operations includes the costs of "drilling, completing, and equipping the unit well." La.R.S. 30:103.1(A)(1). In amending both statutes, the legislature was aware that the penalty provision contained the term "costs of the drilling operations of the well." There was no need to further define it when it had already done so in La.R.S. 30:103.1(A)(1). Clearly "drilling operations" contemplate both drilling and operational aspects of taking and producing oil and gas from land. Otherwise, there would be no incentive for the operator or producer to provide the quarterly reports. While not at issue in *White v. Phillips Petroleum Co.*, 232 So.2d 83 (La.App. 3 Cir.), *writ refused*, 255 La. 907, 233 So.2d 560 (1970), this court considered the penalty to be one for drilling and operating costs.

6

We agree with the trial court that the penalty for "costs of the drilling operations" includes both pre-production and post-production costs.

We agree with the federal court's interpretation in *Brannon Properties, LLC v. Chesapeake Operating, Inc.*, 514 Fed.Appx. 459 (5th Cir. 2013), that the owners would not need to contribute to the costs of drilling operations for the period covered by deficient or failed reporting. Once the operator or producer complies with the statutory requirement, it would no longer be penalized and could start deducting for the costs.

## QUARTERLY REPORTS

Hilcorp also alleges that the trial court erred in finding that it failed to provide quarterly reports and penalizing it for that time frame. We find that this issue has already been decided by this court in *XXI Oil & Gas, LLC*, 124 So.3d 530, where we held that Hilcorp failed to comply with La.R.S. 30:103.1 by submitting an unsworn statement of costs. This court observed that XXI sent a letter by certified mail on April 21, 2011, to Hilcorp requesting both an initial report and quarterly reports. We then stated that "Hilcorp had not yet provided the information required by the statute." *XXI Oil & Gas, LLC*, 124 So.3d at 532. Furthermore, there is no evidence in the record that Hilcorp submitted sworn, detailed, and itemized quarterly reports.

## LEASES

At trial, the parties stipulated that XXI acquired mineral leases over the lands located in the unit. The leases were recorded in the Lafayette Parish conveyance records. Hilcorp's final assignment of error is that the trial court erred in placing the burden of proof on Hilcorp to disprove that XXI's leases were valid. Hilcorp argues that XXI failed to present any evidence of ownership or possession by its

7

lessors of the land or the minerals subject to the leases citing *SLAS Marine, Inc. v. Pounders*, 14-904 (La.App. 5 Cir. 3/25/15), 169 So.3d 643, *writ denied*, 15-931 (La. 9/11/15), 176 So.3d 1038, which held that a recorded lease was not valid as binding because the lessor did not own the property at the time of the lease agreement.

XXI calls this court's attention to *Menoah Petroleum, Inc. v. McKinney*, 545 So.2d 1216, 1219 (La.App. 2 Cir. 1989), which held that "[t]he general rule is that the party attacking the validity of a mineral lease, recorded and on the face of the public records, has the burden of proving the lease's invalidity." In *SLAS Marine*, 169 So.3d 643, it was the party attacking the validity of the lease that presented evidence of its invalidity. We find the trial court correctly placed the burden of establishing the invalidity of the leases on Hilcorp.

Hilcorp further argues that the trial court erred in its ruling that the mineral leases obtained from the Succession of Isaac C. Broussard and Woodrow E. Broussard are valid. Hilcorp contends that the administrator who granted the lease on behalf of the Succession of Isaac C. Broussard did not obtain authority from the court, as required by La.Code Civ.P. art. 3226, to grant a mineral lease over succession property. Hilcorp further claims that Woodrow E. Broussard, Jr. had no authority in his individual capacity to grant a lease to XXI of his interest held in trust.

"'The legal right that a person has to demand the performance of an obligation is called a personal right.'" *Boone v. Conoco Phillips Co.*, 13-1196, p. 5 (La.App. 3 Cir. 5/7/14), 139 So.3d 1047, 1052 (quoting *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267, p. 16 (La. 10/25/11), 79 So.ed 246, 261). "'[A] personal right . . . defines man's relationship to man and refers merely to an obligation one owes to another which may be declared only against the obligor.'"

8

*Id.* (quoting *Eagle Pipe* 79 So.3d 246, 262)(second alteration in original). "'A personal right . . . cannot be asserted by another in the absence of an assignment or subrogation.'" *Id.*; La.Civ.Code art. 1766. The ability to challenge the validity of consent to lease land is a personal action belonging to the parties who executed the lease. *Bass, Ltd. v. Gerald*, 06-1125 (La.App. 3 Cir. 3/7/07), 954 So.2d 243; *Rowan v. Town of Arnaudville*, 02-882 (La.App. 3 Cir. 12/11/02), 832 So.2d 1185.

None of the parties to the two leases that Hilcorp complains about have complained about the execution of the leases. Hilcorp argues that it has a right to challenge the validity of the leases because XXI seeks a penalty based upon such leases being valid. However, Hilcorp has not cited any law to support its position nor have we found any. We find that Hilcorp has no standing to attack the validity of the leases since it was not a party to the leases. If the leases were held invalid due to an action by the parties to the lease, then Hilcorp would have an action for return of the penalties based on those leases.

## DECREE

For the reasons expressed in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Hilcorp Energy Company.

**AFFIRMED.**

9

XXI OIL & GAS, LLC

VERSUS

HILCORP ENERGY COMPANY

**Pickett, J., dissents in part.**

I respectfully dissent from the majority's conclusion that the costs of drilling operations includes both pre-production and post-production costs. I find that the term "drilling operations" in La.R.S. 30:103.2 refers only to the costs associated with drilling the well to completion. When the legislature amended La.R.S. 30:103.1, it required an initial report of the costs of drilling operations (A(1)) and quarterly reports of production costs (A(2)). They did not amend the penalty provision of La.R.S. 30:103.2, which states that if the operator fails to timely provide the information requested by a party with an interest in a portion not leased by the operator or producer, the operator or producer forfeits its right to demand contribution for "the costs of drilling operations of the well." The majority improperly construes that language, giving it the effect of "the costs of the drilling **and** operations of the well."

> Words and phrases must be read with their context and construed according to the common and approved usage of the language. Every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found. Additionally, **statutes that are penal in nature must be strictly construed**. Accordingly, we are bound to a strict interpretation of the plain language of the penalty provisions to which we now turn.

*Katie Realty, Ltd. v. Louisiana Citizens Prop. Ins. Corp.*, 12-588, p. 6 (La. 10/16/12) 100 So.3d 324, 328 (citations omitted)(emphasis ours).

Construing the statute strictly, I would find that the penalties owed by Hilcorp are limited to the costs of drilling the well to completion (pre-production). I would, therefore, limit the penalty to the stipulated amount of $126,096.29. The majority interpretation expands the scope of the penalty to which the operator is exposed.

In all other respects, I concur in the result reached by the majority.