# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1144


**GRACE RANCH, LLC**

**VERSUS**

**BP AMERICA PRODUCTION COMPANY, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. 705-11
HONORABLE J. BYRON HEBERT, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## PHYLLIS M. KEATY
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
D. Kent Savoie, Judges.


**Thibodeaux, Chief Judge, concurs in the result reached.**


**AFFIRMED.**

**Donald T. Carmouche**
**Victor L. Marcello**
**John H. Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Todd J. Wimberley**
**Ross J. Donnes**
**D. Adele Owen**
**Leah C. Poole**
**Caroline H. Martin**
**Christopher D. Martin**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, Louisiana 70810**
**(225) 400-9991**
**Counsel For Plaintiff/Appellant:**
        **Grace Ranch, LLC**

**Chad E. Mudd**
**David P. Bruchhaus**
**M. Keith Prudhomme**
**Matthew P. Keating**
**Mudd & Bruchhaus, L.L.C.**
**410 E. College Street**
**Lake Charles, Louisiana 70605**
**(337) 562-2391**
**Counsel for Plaintiff/Appellant:**
        **Grace Ranch, LLC**

**Carl Duhon**
**Ike Huval**
**Duhon Law Firm**
**Post Office Box 52566**
**Lafayette, Louisiana 70505**
**(337) 237-9868**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
        **Shirley Poirier Van Way,**
        **in her capacity as Independent Testamentary Executor of the**
        ***Succession of J.P. Van Way***

**George Arceneaux, III**
**Penny L. Malbrew**
**Court VanTassell**
**Brittan J. Bush**
**Liskow & Lewis**
**Post Office Box 52008**
**Lafayette, Louisiana 70505**
**(337) 232-7424**
**Counsel for Defendant/Appellee:**
        **BP America Production Company**

**Mark L. McNamara**
**Kelly B. Becker**
**Kathryn Z. Gonski**
**Liskow & Lewis**
**One Shell Square**
**701 Poydras Street, Suite 5000**
**New Orleans, Louisiana 70139-5099**
**(504) 581-7979**
**Counsel for Defendant/Appellee:**
      **BP America Production Company**

**R. Keith Jarrett**
**Kelly T. Scalise**
**Liskow & Lewis**
**One Shell Square**
**701 Poydras Street, Suite 5000**
**New Orleans, Louisiana 70139**
**(504) 581-7979**
**Counsel for Defendant/Appellee:**
      **BHP Billiton Petroleum (Americas) Inc.**

**KEATY, Judge.**

In this oilfield legacy litigation, Plaintiff appeals the trial court's judgment granting motions for summary judgment and an exception of no right of action in favor of Defendants. For the following reasons, the trial court's judgment is affirmed.

## FACTS & PROCEDURAL HISTORY

This mineral law case involves forty acres of immovable property located in Jefferson Davis Parish of which Grace Ranch, LLC ("Grace Ranch") is the owner. On October 10, 2011, Grace Ranch filed suit in contract and tort for contamination of its property resulting from the historical oil and gas exploration and production activities of multiple defendants, including J.P. Van Way ("JPVW"), BP America Production Company ("BP"), and BHP Billiton Petroleum (Americas), Inc. ("BHP") (collectively "Defendants"), pursuant to valid mineral leases.

The forty acres at issue was part of an approximate 166-acre tract ("subject tract") of immovable property owned by Ellen M. Davies in 1915. In 1944, Ms. Davies, as the lessor, executed a mineral lease with John J. Doyle, as the lessee ("subject lease"). That same year, Doyle assigned the subject lease to Stanolind Oil and Gas Company ("Stanolind"), BP's predecessor. In 1957, Stanolind merged into Pan American Petroleum Company ("Pan American"). In 1969, Pan American assigned the subject lease to Clinton Oil Company ("Clinton Oil"), BHP's predecessor. In 1972, Clinton Oil released all of its rights in the subject lease except for the forty acres at issue in this matter. In 1976, Clinton Oil changed its name to Energy Reserves Group, Inc. ("Energy"). In 1977, Energy assigned the subject lease to Tommy Littlepage Oil Properties ("Littlepage Oil"). In 1978, Littlepage Oil assigned half of its working interest in the subject lease to Jack Williams Pipe and Supply Company. In 1984, Littlepage Oil assigned the

remaining half of its working interest to JPVW. The subject lease expired in 1985 or 1986 due to non-production.

With respect to the surface and mineral ownership of the subject tract, it was acquired by Ms. Davies' heirs in 1971. In 1972, Ms. Davies' heirs sold the same to Donald J. Leblanc and Janet Sue Cagle Leblanc ("the Leblancs"), reserving for themselves "all of the oil, gas and other mineral in, on or under said property, together with the right of ingress and egress for the purpose of exercising this mineral servitude." In 1973 and 1974, the Leblancs sold the subject tract to General Farms, Inc. ("General Farms"), subject to any outstanding servitudes and reservations of minerals and leases. In 1995, General Farms acquired one hundred percent of the minerals arising from the termination of the Davies servitude. In 1999, General Farms and the Leblancs transferred the subject tract to Daniel and Jeralyn Ewing ("the Ewings"), reserving an undivided one-half interest in the minerals. The Ewings subsequently sold the subject tract to Grace Ranch in 2006, subject to their one-half interest in the minerals. Grace Ranch acquired one half of the minerals in 2009 as a result of the expiration of General Farms' one-half mineral servitude. Grace Ranch acquired the other half of the minerals in 2016 as a result of the expiration of the Ewings' one-half mineral servitude.

In 2013, approximately two years after filing suit, Grace Ranch sought and obtained assignments of rights in tort and contract from General Farms and the Leblancs, or their heirs and assigns. On January 13, 2017, approximately four years after obtaining the assignments, Grace Ranch filed its First Amended Petition for Damages to assert its assigned claims. Defendants subsequently filed motions for summary judgment, seeking dismissal of Grace Ranch's suit. Additionally, JPVW filed an Exception of No Right of Action, seeking dismissal on similar grounds. The trial court heard the motions and exception on June 14, 2017, and

took them under advisement. Pursuant to the trial court's written reasons for judgment dated July 12, 2017, and its subsequent judgment dated September 16, 2017, the trial court granted the motions and exception and dismissed Grace Ranch's case with prejudice. Grace Ranch appealed.

On appeal, Grace Ranch asserts the following assignments of error:

1. The trial court committed error in dismissing the plaintiff's claims on the basis of the subsequent purchaser rule.

2. The trial court committed error in failing to find that plaintiff has a right of action based on its assignments from prior owners of the surface and minerals.

3. The trial court committed error in finding that the assignment from General Farms to plaintiff was invalid based on General Farms' affidavit of dissolution.

4. The trial court committed error in relying in part on prescription in dismissing the claims of the plaintiff because prescription was not at issue.

5. The trial court committed error in applying the *jurisprudential* subsequent purchaser rule under circumstances where the Civil Code and Mineral Code provide *statutory* support for plaintiff's right of action.

## STANDARD OF REVIEW

An appellate court utilizes the de novo standard of review when reviewing a trial court's judgment on a motion for summary judgment. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839. The appellate court uses "the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to a judgment as a matter of law." *Id.* at 844 (quoting *Supreme Servs. & Specialty Co., Inc. v. Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). An appellate court must be mindful of the movant's burdens of proof required in a motion for summary judgment, which is found in La.Code Civ.P. art. 966(D)(1) and provides:

3

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Additionally, "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4).

Similarly, the standard of review regarding a "peremptory exception of no cause of action is de novo because it raises a question of law." *Hebert v. Shelton*, 08-1275, p. 3 (La.App. 3 Cir. 6/3/09), 11 So.3d 1197, 1201.

The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether [the] plaintiff is afforded a remedy in law based on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.

*Fink v. Bryant*, 01-987, pp. 3-4 (La. 11/28/01), 801 So.2d 346, 348-49 (citations omitted).

## DISCUSSION

### I. Subsequent Purchaser Rule

In its first assignment of error, Grace Ranch contends the trial court committed error in dismissing its claims based upon the subsequent purchaser rule. The subsequent purchaser rule is a jurisprudential rule which provides that a

property owner "has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 10-2267, 10-2272, 10-2275, 10-2279, 10-2289, p. 8 (La. 10/25/11), 79 So.3d 246, 256-57.

*Eagle Pipe* involved a suit by landowners against oil and gas production companies for damages arising from pre-purchase contamination of the property pursuant to various surface leases. The supreme court reviewed Louisiana jurisprudence along with Louisiana statutory law regarding property rights and obligations as they apply to subsequent purchasers of property. *Id.* The supreme court concluded that damage to property constitutes damage to a property owner's right of enjoyment in the property, which is a right of ownership and, consequently, a real right in the property. *Id.* The supreme court noted that as a result, the tortfeasor becomes obligated to the owner of the property whereby the owner is granted a right to demand performance from the tortfeasor by seeking payment of damages. *Id.* The supreme court further concluded that the right to sue is personal and only enforceable by the property owner against the tortfeasor. *Id.* Thus, a subsequent owner of the property has no right to sue the tortfeasor for the previously inflicted damage absent an assignment or subrogation of the prior owner's personal right to sue for that damage. *Id.*

Grace Ranch contends that *Eagle Pipe* is inapplicable because it involved a surface lease, whereas the present matter involves a mineral lease. Grace Ranch's argument is based upon the following language found in a footnote in *Eagle Pipe*, 79 So.3d at 281, n.80: "Moreover, because not factually relevant, we express no

5

opinion as to the applicability of our holding to fact situations involving mineral leases or obligations arising out of the Mineral Code."

Our review of post-*Eagle Pipe* jurisprudence reveals that the subsequent purchaser rule has been applied to mineral leases. In *Boone v. Conoco Phillips Co.*, 13-1196 (La.App. 3 Cir. 5/7/14), 139 So.3d 1047, property owners brought an action against a prior mineral rights lessee for contamination resulting from its oil and gas drilling operations prior to the owners' acquisition of the property. In affirming the trial court's grant of the lessee's motion for summary judgment and exception of prescription, this court in *Boone*, 139 So.3d at 1055, held that, "Under the subsequent purchaser doctrine, [property owners] do not have a right of action to sue the lessee for damages occurring prior to their acquisition of the property."

In *Bundrick v. Anadarko Petroleum Corp.*, 14-993 (La.App. 3 Cir. 3/4/15), 159 So.3d 1137, *writ denied*, 15-557 (La. 11/16/15), 184 So.3d 24, the owners of interests in land brought an action against the former mineral lessees asserting claims of negligence and breach of the obligation to restore the property to its original condition, arising from the lessees' oil and gas activities prior to the owners' acquisition of the land interests. In affirming the trial court's grant of summary judgment in favor of the former mineral lessees, this court in *Bundrick*, 159 So.3d at 1143, agreed that "the subsequent purchaser rule applies in matters involving mineral leases."

We agree with this circuit's holding enunciated in *Boone*, 139 So.3d 1047, and *Bundrick*, 159 So.3d 1137, despite Grace Ranch's reference to *Duck v. Hunt Oil Co.*, 13-628, p. 6 (La.App. 3 Cir. 3/5/14), 134 So.3d 114, 119, *writs denied*, 14-703, 14-709, 14-715, 14-735 (La. 6/13/14), 140 So.3d 1189, 1190, wherein this court held that, "By its own terms, *Eagle Pipe* does not apply to situations involving mineral leases." We find that the foregoing language in *Duck* merely

6

recognizes that a mineral lease was not at issue in *Eagle Pipe*. That same language does not equate to a finding that *Eagle Pipe* cannot apply to mineral leases. This is apparent based upon the *Duck*, 134 So.3d at 119-20, court's conclusion that "the right to sue the defendants for damages under the Burrill and Farrar Leases did not automatically pass to Duck when he acquired the land at issue." This conclusion mirrors the underlying principle in *Eagle Pipe*, i.e., the personal nature of a property owner's claim for damages. We further note that in *Duck*, 134 So.3d at 122, the plaintiff ultimately maintained a right of action to bring suit based upon this court's finding that "the Burrill and Farrar Leases [contained] a stipulation pour autrui for the benefit of third parties."

Other Louisiana circuits have also held that the subsequent purchaser rule applies to mineral leases. In *Global Marketing Solutions, LLC v. Blue Mill Farms, Inc.*, 13-2132 (La.App. 1 Cir. 9/19/14), 153 So.3d 1209, *writ denied*, 14-2572 (La. 4/23/15), 173 So.3d 1164, the first circuit affirmed the trial court's holding that the subsequent purchaser rule prevents claims against former mineral lessees under expired mineral leases. Likewise, in *Walton v. Exxon Mobil Corp.*, 49,569, p. 14 (La.App. 2 Cir. 2/26/15), 162 So.3d 490, 498, *writ denied*, 15-569 (La. 11/16/15), 184 So.3d 25, the second circuit affirmed the trial court's holding that the subsequent purchaser rule precluded landowners from asserting tort claims for pre-purchase damages against past and present mineral lessees and servitude owners because such claims "were the personal rights and claims of the former surface owners."

Accordingly, Grace Ranch's first assignment of error is without merit.

## II.     Right of Action

In its fifth assignment of error, Grace Ranch contends that the trial court committed error in applying the jurisprudential subsequent purchaser rule under

circumstances where the Civil Code and Mineral Code provide statutory support for its right of action. Grace Ranch alleges that a mineral lease creates a real right by the landowner to sue for property damage that runs with the land.[1] Thus, according to Grace Ranch, if a landowner grants a mineral lease, any and all subsequent purchasers of that property inherit the right to sue the former mineral lessee upon becoming the owner of that property. At trial, Grace Ranch's argument was dismissed by the trial court according to its reasons for judgment which state that, "[Grace Ranch] made several arguments against the application of the subsequent purchaser rule to the facts of this case, but their actions fail to support their argument."

In order to determine whether there is merit to Grace Ranch's assignment of error, we must review applicable Louisiana jurisprudential and statutory law. In *Bundrick*, 159 So.3d at 1143, the plaintiff argued that "mineral rights are real rights and, as such, pass with the property to a subsequent purchaser without the need for specific assignment or subrogation." In finding no merit to the plaintiff's argument, the third circuit noted: "[D]espite the language of La.R.S. 31:16 stating that mineral rights are real rights, that status is reserved to the mineral lessee and not the mineral lessor." *Id.*

The classification of mineral rights as real rights with respect to a lessee was succinctly explained by the U.S. District Court for the Western District of Louisiana in *Minvielle v. IMC Global Operations, Inc.*, 380 F.Supp.2d 755, 775 (W.D. La. 2004), as follows:

> In the case of a mineral lease, the Mineral Code designates the right as a real one in order to protect the mineral lessee from losing his rights if the land is sold during the existence of the lease. This

---

[1] In its brief, Grace Ranch argues that it is an "obvious fact that the mineral lease does not have to create a real right 'in favor of' the surface owner for the surface owner to seek remediation because the surface owner already owns real rights 'in his favor,' as he owns the bundle of real rights that constitutes surface ownership."

8

conclusion is apparent in the reasoning behind La.R.S. 31:16, which [is] illustrated in the Comments stating:

> All things considered, the lease has the major characteristics of a real right: the mineral lessee may follow the land, regardless of transfers of ownership; the mineral lessee may assert his rights against the world just as the proprietor of any other real right; he may enjoy directly and draw from the land a part of its economic advantages by appropriating a wasting asset; he has certain rights of preference; and he holds a right that is in reality susceptible of a type of possession through exercise.

The fact that the real right created is the right held by the lessee, is specifically noted in the Comments to La.R.S. 31:154, "The mineral lease, though it creates a real right *in the hands of the lessee* is still an elaborate contractual relationship." Accordingly, the mineral lease gives real rights to the lessee, but the Mineral Code is void of any indication that it creates real rights in favor of the lessor. This is accounted for in the Comments to La.R.S. 31:16, which note:

> It is true that there are certain distinctions from the normal real right which give the mineral lease markings of kinship to personal rights. Not all obligations created by the lease are binding on a subsequent owner of the land.

After reviewing *Bundrick*, 159 So.3d 1137, and the federal court's explanation in *Minvielle*, 380 F.Supp.2d 755, we find that Louisiana statutory law holds that a mineral lease creates a real right in favor of the mineral lessee rather than the lessor. Thus, Grace Ranch's argument that a mineral lease creates a real right which runs with the land and enables a landowner to sue for property damage, is without merit.

Grace Ranch next argues that upon the expiration of a mineral lease, the mineral lessee owes an end of the lease restoration obligation to both the mineral lessor and surface owner, which can be enforced by any subsequent purchaser of the property. In its amended petition, Grace Ranch alleged that Defendants violated the "implied obligation of lessees under" La.R.S. 31:122, which provides:

9

A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.

The statute's express terms obligate the lessee to perform the contract in good faith and act as a reasonably prudent operator. *Terrebonne Parish Sch. Bd. v. Castex Energy, Inc*. 04-968 (La. 1/19/05), 893 So.2d 789. This article fails to impose an express duty to restore the surface. *Id*. "Rather, it simply adapts the general, 'good administrator' standard of La.Civ.Code art. 2710, applicable to all leases, to the specific context of a mineral lease." *Id*. at 797. "[I]n the absence of an express lease provision, Mineral Code article 122 does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised his rights under the lease unreasonably or excessively." *Id*. at 801.

In this case, Defendants have no implied duty to restore the surface of the property under La.R.S. 31:122 absent proof that they unreasonably exercised their rights under the lease. Thus, Grace Ranch's reliance on La.R.S. 31:122 is misplaced.

Moreover, Grace Ranch's argument presumes that a mineral lease burdens the lessee with a real obligation to restore property in favor of the landowner. To determine whether Grace Ranch's presumption is correct, we look to the relationship between real obligations and real rights. In that regard, "[a]n obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee." La.Civ.Code art. 1756. "A real obligation is a duty correlative and incidental to a real right." La.Civ.Code art. 1763. The comments to La.Civ.Code art. 1763 provide that real

obligations are "incurred as a result of ownership or possession of a thing burdened by a real right[.]" "Mineral rights are real rights" which are subject to prescription of nonuse for ten years. La.R.S. 31:16. "The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease." *Id.* Under La.R.S. 31:114, "[a] mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals."

In analyzing the foregoing articles with respect to mineral leases, we find that the mineral lessee is the owner of the real right. The corresponding real obligation, therefore, relates to the burden placed on the landowner's rights in property pursuant to the mineral lease, i.e., the property owner's obligation to let the mineral lessee enter the property and explore for oil and gas. Thus, Grace Ranch's presumption that the mineral lease burdens the lessee with a real obligation to restore property in favor of the landowner is misplaced.

Grace Ranch contends that it has a right of action to sue for pre-acquisiton damages based upon the legal principles governing limited personal servitudes and usufructs. In that regard, we look to the dual nature of a mineral lease, i.e., featuring characteristics of both contracts and rights in property, as explained by the federal court in *Minvielle*, 380 F.Supp.2d at 775, as follows:

> Thus, it is in the nature of a limited personal servitude that the mineral lease is a real right. The limited personal servitude is explained in the Comments to La. C.C. Art. 639 as constituting "an intermediary category between personal and predial servitudes. Like usufruct and habitation, they are charges on things in favor of a person rather than an estate; like predial servitudes, they are necessarily charges on an immovable belonging to another person and are confined to certain advantages of use or enjoyment." Although a right of use, i.e., a personal servitude, is a real right, it is one granted in favor of a person rather than an estate, and therefore it does not pass with the property upon sale of the property. *Sustainable Forests, L.L.C. v. Harrison*, 846 So.2d 1283, 1284 (2003).

11

Based upon our interpretation of *Minvielle*, along with Louisiana jurisprudence and statutory law, we find that although a mineral lease is a real right under La.R.S. 31:16, it is not purely a real right that automatically attaches to the property. Thus, Grace Ranch's argument does not defeat application of the subsequent purchaser rule whereby the right to sue for pre-acquisition damages is a personal right of action that a subsequent purchaser cannot acquire without an assignment or subrogation of rights. Accordingly, Grace Ranch's argument is without merit.

Grace Ranch further contends that as the surface owner, it has a right of action pursuant to La.R.S. 31:11(A), which provides:

> The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. Similarly the owners of separate mineral rights in the same land must exercise their respective rights with reasonable regard for the rights of other owners.

Grace Ranch then compares La.R.S. 31:11(A) to its analogous provision contained in La.Civ.Code art. 667, which governs the limitations placed on a proprietor's use of his property.[2]

A similar issue was addressed in *Global Marketing*, 153 So.3d 1209, wherein the plaintiff alleged that it had a real right of action against the defendants based upon La.R.S. 31:11 and La.Civ.Code art. 667. The first circuit held:

> Even if we make the assumption that La. C.C. art 667 bestows real rights and obligations between owners of adjacent immovable property, Global never shared that relationship with the defendants. As the article is written, Global and the defendants were never "neighbors." The mineral leases were executed decades before Global

---

[2] According to La.Civ.Code art. 667:

[I]f the work [a proprietor] makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

purchased the property. By the time Global purchased the property in 2005, all of the defendants' mineral leases had expired. The defendants never did lease rights to the minerals under the property while Global owned it, which means they never could have been "neighbors," even in the broadest sense. Therefore, Global cannot enforce any rights against the defendants under La. C.C. art. 667. While Global insists that this article confers real rights to be enforced against the defendants, Global presents no statute or jurisprudence which supports this interpretation.

Article 11 of the Mineral Code confers correlative rights on the land owner and the owner of the mineral right to exercise their rights with reasonable regard for those of the other, and Article 134 states that in violation of a mineral lease, the aggrieved party is entitled to appropriate relief provided by law. Again, these articles contemplate the real rights and obligations that exist between parties who occupy the land contemporaneously with a mineral lease.

*Id.* at 1215 (footnotes omitted).

In this case, the evidence in the record reveals that the subject lease expired prior to Grace Ranch's acquisition of the property. Thus, Grace Ranch had no real right of action against Defendants pursuant to these articles because they were never neighboring proprietors. Accordingly, Grace Ranch's argument is without merit.

Grace Ranch contends that it acquired the right to enforce the end-of-lease obligations of the subject lease when it acquired one half of the mineral rights upon the expiration of General Farms' mineral servitude. In support, Grace Ranch cites *Plaquemines Parish Government v. Getty Oil Co.*, 94-1634 (La.App. 1 Cir. 5/5/95), 662 So.2d 773, and *Reagan v. Murphy*, 105 So.2d 210 (La.1989), for the proposition that when an owner acquires mineral rights, the ownership of the minerals and surface are merged, and the owner of the land thereby acquires the right to enforce the lessee's obligations arising from the prior lease. Our review of *Plaquemines Parish Government*, 662 So.2d 773, and *Reagan*, 105 So.2d 210, reveals that both cases involved leases that had not expired. In this case, the

13

subject lease had expired by the time Grace Ranch acquired its interest. Accordingly, Grace Ranch's reliance on those two cases is misplaced.

Grace Ranch's fifth assignment of error is without merit.

## III.    Post-Sale Assignment of Rights

Grace Ranch's third assignment of error focuses on its right to assert claims based upon its assignments from previous property owners. Grace Ranch contends that it was assigned the right to enforce the restoration obligation of the subject lease from General Farms, in its capacity as owner of the mineral rights. It alleges that the right of restoration was also assigned by both General Farms and the Leblancs, in their capacity as surface owners, since their surface rights were subject to the lease. Grace Ranch contends that the trial court committed error in finding that the assignment from General Farms was invalid based on General Farms' affidavit of dissolution.

In its reasons for judgment, the trial court acknowledged that Grace Ranch "sought and obtained a number of assignments from previous owners of the property" "[i]n an attempt to comply with the subsequent purchaser rule[.]" The trial court explained that at the time General Farms assigned its claims, it was a dissolved corporation and as such, legally incapable of assigning claims. The trial court noted that General Farms had been previously dissolved by affidavit without formal liquidation in accordance with La.R.S. 12:142.1, which did not enable General Farms' own claims to survive. The trial court held that corporations such as General Farms which have been "dissolved by affidavit do not maintain any claims or causes of action to assert on its own behalf and therefore have nothing to assign."

14

On review, the record reveals that General Farms was dissolved by affidavit on January 25, 1999,[3] pursuant to La.R.S. 12:142.1 and 12:250.1. Although La.R.S. 12:142.1 has since been repealed by 2014 La. Acts No. 328, § 5, the fourth circuit in *Gendusa v. City of New Orleans*, 93-1527 (La.App. 4 Cir. 2/25/94), 635 So.2d 1158, 1162, *writ denied*, 94-1508 (La. 9/23/94), 642 So.2d 1296, explained:

> [Louisiana Revised Statutes] 12:142.1 provides for corporate dissolution by affidavit, without formal liquidation:
>
> > "A. In addition to all other methods of dissolution, *if the corporation is not doing business and owes no debts*, it may be dissolved by filing an affidavit with the secretary of state executed by the shareholders, . . . , attesting to such facts and requesting that the corporation be dissolved. Thereafter, the shareholders, . . . , shall be personally liable for any debts or claims, if any, against the corporation in proportion to their ownership in the shares of the corporation." (Emphasis added)

The *Gendusa* court interpreted the provision as follows:

> This provision was added in 1982 to provide a means of avoiding the costs and delays of a formal liquidation, but is limited in its application to corporations no longer doing business. While the statute provides that shareholders are to assume any lingering corporate debts, there is no provision allowing survival of the corporation's inchoate claims. Where a corporation has such outstanding claims or obligations, the appropriate method of dissolution is through a voluntary liquidation, with appointment of a liquidator and the orderly collection of claims, payment of debts and transfer of assets.

*Id*. at 1162.

Application of *Gendusa* to the instant matter provides that General Farms' election to dissolve the corporation via La.R.S. 12:142.1 resulted in a waiver of its right to assert any outstanding claims since "there [was] no provision allowing survival of the corporation's inchoate claims." *Gendusa*, 635 So.2d at 1162.

---

[3] The trial court's reasons for judgment state that General Farms was dissolved by affidavit on January 25, 2009, although the record reflects that it was dissolved on January 25, 1999.

Accordingly, we find that General Farms was a dissolved corporation incapable of assigning claims to Grace Ranch.

With respect to the assignments from the Leblancs, the trial court held that the "only claims they could assign were those tort claims arising during their approximately 1.5 years of ownership of the surface of the tract of land." The trial court remarked that if those claims existed, they prescribed when Grace Ranch failed to timely supplement the petition. According to the trial court, Grace Ranch filed its original petition in 2011 and obtained assignments of the tort claims from the Leblancs and/or their heirs in January 2013. The trial court held that "[a]cquiring the rights does not cure the defect in the original Petition."

On review, we look to statutory and jurisprudential law to determine when an amendment relates back to the filing of the initial pleading. In that regard, La.Code Civ.P. art. 1153 provides: "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." An amendment relates back only if the plaintiff possessed a right of action to assert those claims at the time of the initial filing. *See Boone*, 139 So.3d 1047; *see also Taylor v. Babin*, 08-2063 (La.App. 1 Cir. 5/8/09), 13 So.3d 633, *writ denied*, 09-1285 (La. 9/25/09), 18 So.3d 76.

An amendment of claims was explained in *Boone*, wherein this court found that the plaintiffs' second supplemental petition, which was filed over two years after the filing of the initial petition, did not relate back. In *Boone*, 139 So.3d at 1061 (footnote omitted), the court stated:

> Even if the September 2012 assignments from the previous owners had conferred valid and timely rights, the assignments arose two and a half years after the original petition was filed in May of

2010. As discussed, the tort rights had prescribed before the original petition was filed, and the assignments did not confer a right of action in contract. The rights sought to be bestowed in the assignments were not exigible at the time of suit in 2010. Therefore, the claims in the new petition were supplemental, not amending, no matter how the caption of the petition reads, and the relation back of La.Code Civ.P. art. 1153 applies only to amending petitions. *Smith v. Cutter Biological*, 99-2068 (La. App. 4 Cir. 9/6/00), 770 So.2d 392.

An "untimely filed original petition does not support the relation-back of a new cause of action[.]" *Allen v. State, Dept. of Public Safety & Corrections*, 12-430, p. 6 (La.App. 3 Cir. 11/7/12), 107 So.3d 106, 110 (quoting *Cutter Biological*, 770 So.2d at 413). Nor does an original petition filed by a party without a right of action to file it. *See Naghi v. Brener*, 08-2527 (La. 6/26/09), 17 So.3d 919.

The *Boone* court further discussed an amendment of pleadings under La.Code Civ.P. art. 1151 versus supplemental pleadings under La.Code Civ.P. art. 1155. The former allows a party to "*amend* its petition if the new claims accrued *prior* to filing the original suit" whereas the latter allows a party "to file a *supplemental* petition setting forth related items of damage or causes of action that became exigible *after* the original petition was filed[.]" *Boone*, 139 So.3d at 1061, n.3. The *Boone* court advised, however, that "relation back of [La.Code Civ.P. art.] 1153 applies only to the *amended* petition." *Id*.

In this case, the evidence in the record confirms that Grace Ranch filed its original petition in 2011. In 2013, Grace Ranch sought several assignments of tort claims from the Leblancs and/or their heirs. According to La.Civ.Code art. 3493, "[w]hen damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." In 2017, Grace Ranch filed a "First Amended Petition for Damages," asserting the tort claims it was previously assigned in 2013. According to the dictates of *Boone*, the rights sought to be bestowed in the assignments were not exigible at the time Grace Ranch filed suit in 2011. Thus, the claims asserted in Grace Ranch's 2017 pleading were

17

supplemental rather than amending. Since relation back under La.Code Civ.P. art. 1153 applies only to amending petitions, the claims asserted in Grace Ranch's 2017 supplemental petition do not relate back to the original petition's filing. Since the claims do not relate back, the newly alleged tort claims prescribed before they were asserted.

On appeal, Defendants also contend that the mineral lease was expired. Defendants argue that General Farms could not validly assign claims under an expired mineral lease just as the LeBlancs could not validly assign rights that were subject to an expired lease.

On review, we look to *LeJeune Brothers, Inc. v. Goodrich Petroleum Co., L.L.C.*, 06-1557, p. 6 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, 28, *writ denied*, 08-298 (La. 4/4/08), 978 So.2d 327, wherein this court agreed that it is "impossible to transfer rights to an assignee under an expired mineral lease." This court noted:

> Although LeJeune Brothers argues it acquired the property from the mineral lessor, since the lease had expired at least two years before Baez sold the property to LeJeune Brothers, Baez was not a mineral lessor. Therefore, he could not assign any rights under the expired Baez lease in that sale. Further, we note LeJeune Brothers at the summary judgment hearing acknowledged it was not an assignee or party under the lease[.]

*Id*.

In this case, the evidence in the record reflects that General Farms owned the surface rights and mineral rights in the subject lease. The subject lease expired by 1986. Grace Ranch thereafter obtained the assignments in 2013. Grace Ranch, therefore, could not have been assigned any rights in the subject lease because "it [is] impossible to transfer rights to an assignee under an expired mineral lease." *LeJeune*, 981 So.2d at 28. Accordingly, Grace Ranch's third assignment of error is without merit.

18

Grace Ranch's fourth assignment of error alleges that "[t]he trial court committed error in relying in part on prescription in dismissing the claims of the plaintiff because prescription was not at issue." We decline to address this assignment based on our finding that Grace Ranch has no right of action.

## DECREE

The trial court's judgment granting motions for summary judgment in favor of J.P. Van Way, BP America Production Company, and BHP Billiton Petroleum (Americas), Inc. and an exception of no right of action in favor of J.P. Van Way is affirmed. All costs associated with this appeal are assessed to Grace Ranch, LLC.

**AFFIRMED.**